# WELLERSBURG AND WEST NEWTON PLANK ROAD COMPANY *vs.* HENRY BRUCE.

In a suit by a road company for a subscription to its capital stock, the plaintiffs offered in evidence the subscription list containing the defendant's subscription, but would not say that they would give any other evidence to the jury. HELD:

That this testimony being legal and competent, the court had no right to require, as a condition upon which it was to be received, that the plaintiffs should disclose in advance what other evidence they intended to offer.

In proving his case, the plaintiff is not confined to any particular order in which to offer his evidence; if it be legal and material to the issue, it must be received without reference to the order in which it is introduced.

But if testimony is offered which has no tendency to prove the issue, it is error to permit it to go to the jury.

If legal testimony has been received which turns out to be so light and inconclusive that no rational mind can infer from it the fact which it is offered

---
Plank Road Co. *vs.* Bruce.
---

to establish, the court, when applied to for that purpose, should instruct the jury, that there is no evidence before them to warrant their finding that fact.

APPEAL from the Circuit Court for Allegany county.

*Assumpsit*, by the appellant against the appellee, upon a subscription for four shares of the capital stock of the plaintiff at $25 per share. Plea, *non assumpsit*.

*1st Exception.* The plaintiff offered in evidence the subscription list, to which the defendant's subscription for four' shares was admitted. By this subscription, the subscribers agreed to pay to the said company $25 for each share subscribed. The plaintiff then proved demand of payment of these shares before suit brought, and would not say that it would give any other evidence to the jury. To the admissibility of this paper under such circumstances the defendant objected, which objection the court, (PERRY, J.,) sustained, and refused to permit the evidence to go to the jury. To this ruling the plaintiff excepted.

*2nd Exception.* The plaintiff then offered in evidence an act of the legislature of Pennsylvania of 1849, regulating Turnpike and Plank Road Companies, the provisions of which are sufficiently stated in the opinion of this court; also, an act of 1850, appointing commissioners to open books, receive subscriptions and organise the plaintiff, &c; and also, a license by the Governor of said State authorising toll-gates to be erected on the plaintiff's road, in accordance with the provisions of the said act of 1849. The plaintiff, then, again offered the subscription list before mentioned, and intended to offer no further evidence. The defendant again objected to the admissibility of this paper, and the court again sustained the objection and refused to permit it to go to the jury. To this ruling the plaintiff excepted.

*3rd Exception.* The defendant then prayed the court to instruct the jury, that there was no evidence before them from which they could find that the plaintiff had any legal existence as an incorporated company or any capacity to sue in this court, and therefore it was not entitled to recover, which instruction

the court gave. To this ruling the plaintiff excepted, and the verdict and judgment being against it, appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*J. H. Gordon* for the appellant.

The first point presented is upon the admissibility, as evidence, of the original subscription of the defendant to the stock of the company. The signature was admitted, and I can conceive of no legal cause for its rejection. There could be no pretence that it was irrelevant, because it was the cause of action declared upon, and tended directly to prove the issue. If the evidence offered had appeared upon its face to be irrelevant, the court might have rejected it, unless the plaintiff had given assurance that other evidence would be offered to make it relevant. But I know of no principle of evidence, nor of any decision, which would justify the court in excluding evidence *prima facie* relevant and material, until assurances are given that other evidence will be given which the court may think necessary to enable the party to recover. In *Davis vs. Calvert*, 5 *G. & J.*, 304, the court says, that "nothing that is pertinent or material to the issue joined, and tending to prove or disprove it, is inadmissible if offered to be established by competent testimony; and it is the duty of the judge, in the exercise of a sound discretion, to discriminate between such facts as are merely collateral and foreign to the issue and such as are connected with it. It is sometimes difficult to ascertain whether a particular fact offered in evidence is connected with the issue, and will or will not become material in the progress of the investigation. In such cases, the court, not clearly seeing that it is wholly foreign and irrelevant to the issue, and cannot be connected with it by evidence of other facts and circumstances, it is proper and usual in practice to admit the proof on the assurance of the counsel who tenders it, that it will turn out to be pertinent and material." This is the extent to which the authorities go, and they are confined to cases in which the relevancy is not apparent. The question has al-

ready been settled in the case of *Whittington vs. The Farmers Bank,* 5 *H. & J.,* 491, 499. In that case the plaintiff offered in evidence the promissory note after the signatures were proved. The defendant objected, because it did not appear from the note that it had been protested. The court overruled the objection, and upon appeal the judgment was affirmed. The ground of the objection here is, that the evidence was not admissible till the plaintiff proved its capacity to contract and sue. But upon *non assumpsit* that was admitted, and therefore required no proof. *Whittington vs. The Farmers Bank,* 5 *H. & J.,* 493. If, however, the court should hold the plaintiff to proof of its corporate power, the evidence rejected in the first exception was admissible for this purpose, showing that the defendant had been dealing with the company and treating it as a body capable of making a contract, and thereby admitting its capacity to sue. "When a cognizance, mortgage, note or other instrument is given to a corporation as such, the party giving it is thereby estopped from denying the corporate existence of the corporation, and no further proof thereof is necessary until such proof is rebutted." This principle is announced in 14 *Johns.,* 245. 2 *Missouri,* 169. 5 *Litt.,* 47. 6 *Verm.,* 315. 3 *Hawks.,* 520. In the case of an instrument not under seal, as here, it would not operate strictly as an estoppel, but it would be an admission *prima facie* sufficient to entitle the plaintiff to recover unless rebutted.

The next point is upon the sufficiency of the acts of incorporation, and the license of the governor of Pennsylvania, to prove the corporate power of the plaintiff. The act of 1849 is a general law, intended to regulate corporations to be created by special acts. And its second section provides, that when the commissioners to be appointed by such special acts shall have received subscriptions amounting to ten per cent. of the whole capital stock, they may certify the fact to the governor, who is thereupon authorised to issue his letters patent, and thereby to create and erect the subscribers to the capital stock into a body corporate. The twelfth section provides, that when the company so created shall have finished five miles or more of its

road, the president may give notice to the governor, who shall appoint three persons to examine the road and report to him whether the road is executed in a workmanlike manner, according to the intent of the act. And if their report shall be in the affirmative, then the governor shall, by license, authorise the said company to erect toll-gates upon the road. This act and the special act of 1850 were in evidence, as well as the license by the governor under the twelfth section, and the court held the evidence to be insufficient, because the patent provided for by the second section was not produced. In this I think the court erred. In *Agnew vs. The Bank of Gettysburg*, 2 *H. & G.*, 478, the only evidence offered to show the corporation was the patent of the governor, like that required by the act in this cause, and the court held the evidence sufficient without producing the acts of incorporation. They say, "the granting of the patent by the governor is, on his part, neither the exercise of a judicial or ministerial authority, but the fulfilment of a high executive trust and confidence; and it would certainly be demanded by that comity which is due from one sovereign State to another that we should presume, until the contrary is proven, that the public acts of the chief magistrate of such State, purporting to be in execution of the laws, were legitimate acts and within the scope of his powers as such officer, until the contrary is established by the proof of the laws themselves." Now, if the granting of the patent, under the second section of the act of 1849, "was the fulfilment of a high executive trust," which would raise the presumption that everything required to be done by the corporation to entitle it to a patent was regularly done according to law, does not the same principle of comity apply to the license granted under the twelfth section? I can see no reason why it should not. The granting of the license is the fulfilment of an executive trust as much as the patent, and as the patent is evidence from which the passage of the acts of the legislature might be presumed, because of the comity existing between States, it necessarily follows, that the production of the license by the plaintiff would raise the presumption, that everything required by law to be done to entitle it to the license had been regularly done. The

same principal of international comity is recognised by the *Supreme Court* in *Bingham vs. Cabot, et al.*, 3 *Dal.*, 19.

*William Price* and *Samuel M. Semmes* for the appellee.

There is but one and the same question made by each exception, and that is, whether, (where the plaintiff is a foreign corporation,) it is necessary for it on the general issue to show its charter of incorporation? This question we had supposed was long since settled in Maryland, by the explicit decision of the Court of Appeals, in the case of *Agnew vs. The Bank of Gettysburg*, 2 *H. & G.*, 493. At the trial the plaintiff, instead of first producing its charter, offers a subscription book, (the signature of the defendant thereon being admitted,) and proves that it demanded of the defendant payment of the sum claimed to be thereby due from him, and there rests its case; or "would not say that it would give any other evidence to the jury," which means the same thing. It is not material whether the charter precedes or follows the other testimony, but it had to be shown to give validity and effect to the other evidence. No weight of testimony, however great, is sufficient to maintain the plaintiff's case, if it do not show that by law it has been effectually created a corporation. And the evidence, and nothing less, which in Maryland is regarded as sufficient to show this, is the charter itself. On passing to the second exception, the court sees that the plaintiff adds to its previous testimony two acts of the State of Pennsylvania, and a public document designated "The license from the governor of Pennsylvania;" and then giving notice that it intends to offer no further evidence, asks again that its testimony be admitted, which the court very properly refuses, as it did at first; for no objections that existed originally to the admissibility of the subscription book, were removed by the introduction of these two acts and the license.

Those who dissent from the rulings of the court below, borrowing an idea from Judge Archer's argument, in delivering the opinion of the court, in the case of *Agnew vs. The Bank of Gettysburg*, say, that these acts and the license, viewed

together, ought to have satisfied the court that the plaintiff had by law been effectually created a corporation; because from the twelfth section of the act of 1849, it is seen the plaintiff must have finished five miles or more of its road before it could have obtained the license permitting it to erect toll-gates, and that the granting of such license presupposes the existence of a charter lawfully obtained.   Had the corporate existence of the plaintiff been a fact for the finding of the jury, it is admitted that a strong presumption in favor of the charter might be asked of the jury upon these acts and license.   But the plaintiff's incorporation was a subject for the exclusive investigation of the court.   And the court might have departed from the law as announced by Judge Archer, that "it was necessary for the plaintiff on the general issue to show its charter of incorporation," and regarded the acts and license as sufficient to show that the plaintiff was a lawful corporation; that is to say, the court might have dispensed with the production of the charter, and relied on presumptive evidence alone to satisfy its mind of the plaintiff's lawful corporate existence.   But to have done this, the doctrine above recited must have been disregarded, and such departure from the old doctrine, if approved by this court, would unsettle the rule on the subject for the future, and each of the *nisi prius* courts be left to judge for itself on the like question as it arises hereafter in causes upon trial before it.   For if we let go the rule as laid down in *Agnew vs. The Bank of Gettysburg*, what are to be the standards of presumptive evidence to control courts on the subject?   The facts of this and that case may be wholly unequal and unlike each other, and yet the mind of a court be as well satisfied in the one case as the other, of the truth of the presumption contended for.   In the case before us, suppose that the plaintiff, instead of producing the governor's license, had, after the two acts were offered, called a witness, and proved that he had been on the plaintiff's road, saw toll-gates upon it, paid toll for traveling thereon, &c.   Now would not the testimony of this witness, taken in connection with the acts aforesaid, have been equally

as strong, nay stronger than the acts and license,. to satisfy the mind of the court that the plaintiff had, by law, been effectually created a corporation? Under this new dispensation of the law, any traveler who had ever been on a rail road, a canal, or a turnpike built by any company under a foreign charter, would be competent to show the corporate authority of the company on any trial to which it might be a party.

MASON, J., delivered the opinion of this court.

In proving his case, a plaintiff is not confined to any particular order in which to offer his evidence. If the evidence be legal and material to the issue, it should be received by the court without reference to the order in which it is introduced. *Caton vs. Carter*, 9 *Gill & Johns.*, 476. But if on the other hand testimony is offered which has no tendency to prove the issue in the case, it is error to permit it to go to the jury: and where legal testimony has been received, but which turns out to be so light and inconclusive that no rational mind can infer from it the fact which it is offered to establish, or where there is an entire failure of evidence upon any one material fact involved in the issue, it is the duty of the court, when applied to for that purpose, to instruct the jury that there is no evidence before them to warrant them in finding the fact thus attempted to be proved. *Clarke vs. Marriott*, 9 *Gill*, 331. *Maslin vs. Thomas*, 8 *Gill*, 18. *Hatton vs. McClish, ante*, 407.

Upon these general principles depends the question involved in the first exception. That the testimony, *the subscription list*, which was rejected, was legal and competent, there can be no doubt. It was as essential to the plaintiff's right to recover, that they should prove the defendant's *promise to pay*, as it was to establish their own corporate existence, and it was for the plaintiffs to determine which of these facts should be first established. There was no authority in the court to require, as a condition upon which this evidence was to be received, that the plaintiffs should disclose in advance what other proof they intended to offer, and the rejection of the

evidence on that account was therefore erroneous.   The legal sufficiency however of this evidence to establish the whole case is quite a different question.   The issue was made up of two substantive propositions, both of which the plaintiffs were obliged to prove before they could recover; one was their own corporate existence, and the other was the promise, implied or expressed, of the defendant to pay his subscription; and should the plaintiffs only establish one of those propositions, but entirely fail to prove the other, there would be virtually and practically such a failure of evidence as to defeat their case.   These questions however cannot arise upon the admissibility of evidence, but must be presented by prayers after the evidence has been closed.

The second exception presents virtually the same question, and was therefore for the same reasons erroneous.

The third exception presenting the question of the propriety of the ruling of the court in granting the defendants' prayer, which was, that the plaintiffs' had not sufficiently shown their corporate existence to entitle them to recover, need not, *the court* think, be commented upon or decided, upon this appeal.   The judgment being reversed upon other exceptions, and the cause remanded, this question becomes immaterial, in the opinion of the majority of the court, because upon a second trial, the supposed defects in the plaintiffs' chain of proof, can be easily supplied.

It is my individual opinion we are bound also to decide the third exception in this record; for if the evidence offered by the plaintiffs was defective in not sufficiently showing their corporate existence, the judgment ought to be affirmed, notwithstanding the error of the ruling of the court in the 1st and 2nd exceptions.   These errors would therefore become wholly immaterial, for even though the rejected evidence had been admitted, it would not have varied the result, assuming that the corporate existence of the plaintiffs was not sufficiently established.   The case should be decided upon the record as it is before us, and we have no power to reverse a judgment upon an immaterial point, merely for the purpose

of granting either party a new trial, and upon the supposi-tion that new and better testimony might be offered. 7 *Har. & Johns.*, 147. 4 *Gill & Johns.*, 273. 9 *Gill & Johns.*, 439. 9 *Gill*, 1, 56, 156.

I concurred however in the reversal of this judgment, because I believed there was error also in the ruling of the circuit court upon the third exception, and that upon the case as made in the record, the plaintiffs were entitled to recover, if the jury believed their evidence.

The evidence on this point consisted, in part, of an act of the legislature of Pennsylvania, entitled "An act regulating Turnpike and Plank Road Companies." By the 2nd sec-tion, it was made "lawful for the governor by letters patent, &c., to create the subscribers into one body politic," &c. By the 12th section it was further provided, that after five miles of the road was finished, and examined and approved, &c., the governor shall issue a license to permit the company to erect gates upon the road, &c. There was also offered in proof a *license* issued by the governor under and by virtue of that section, authorising the toll gates to be erected; but there was no express evidence that the patent, as provided for in the second section, was ever granted by the governor, and on that account the proof is supposed to be radically defective, and for this position the case of *Agnew vs. Bank of Gettys-burg*, 2 *Har. & Gill*, 478, is relied on. In that case, the charter from the governor of Pennsylvania, incorporating the bank was produced, but the act of the legislature authorising or requiring the charter from the governor, was not given in evidence, and the court there said, that that comity which should exist between one sovereign State and another, should raise the presumption, until the contrary be shown, that the public acts of the chief magistrate of the State, purporting to be in execution of the laws, were legitimate acts, and within the scope of his powers as such officer.

In the present case I cannot perceive why the same comity should not require us to presume, that the license granted by the governor, purporting to be in pursuance of the law, was

a regular exercise of power, and further to presume from it, that the patent had duly and regularly preceded it. In the case of *Agnew vs. The Bank*, the existence of the act of the legislature was presumed, because of the charter which purported to be granted under and by virtue of it, and we are asked in this case to presume the granting of the patent, because of the issuing of the license, which purported to be in pursuance of the patent required by the law. In the one case, without an act of the legislature, the charter would have been wholly inoperative and void, and in the other, without the patent, the license would be equally unauthorised and unavailing, and if we are warranted in the first case, in assuming the existence of the act of the legislature to support the charter, why not in the second, assume the existence of a patent to support or authorise the license?

The act of the Pennsylvania legislature, which is before us, provides that "it *shall and may be lawful* for the governor to grant the letters patent," &c. This being an act of a public nature, we must regard this language as mandatory upon the governor, upon the prerequisites of the law being complied with, and not merely investing him with power to grant or withhold the patent in his discretion. In the case of the *Newburgh Turnpike Company, vs. Miller, 5 Johns. Ch. Rep.,* 113, Chancellor Kent says, "The principle to be deduced from the cases is, that whenever an act to be done under a statute, is to be done by a public officer, and concerns the public interest, or the rights of third persons, which require the performance of the act, then it becomes a public duty in the officer to do it." To assume then that the governor in this case had not granted the letters patent, upon being required to do so by the performance of the previous conditions, would be to assume he had disregarded the obligations imposed upon him by the laws of his State; or to assume that the duty had been irregularly or defectively discharged, would be equally unwarrantable and against the comity which should exist among sister States.

But it may be asked, how are we to know without the pat-

ent, whether the *conditions* and prerequisites upon which the letters patent were to depend, have been complied with? We think the *license* affords the evidence. If the governor has issued this license without the authority which the patent affords, it would be a gross dereliction of duty, and to avoid such a presumption, we must assume the patent to have regularly and in due course of law preceded the license.

*Judgment reversed and procedendo awarded.*