(Decided 14th March 1894.)

GREENLEAF TAYLOR, Master of Bugeye Howard H. B. Taylor *vs.* THE STATE OF MARYLAND. SAME *vs.* SAME.

*Boundaries of Talbot County—Indictment for Taking Oysters without License—Plea to Jurisdiction—Demurrer to Plea—Evidence.*

The Act of 1706, ch. 3, defined the bounds of Talbot county, and what waters were included within it. The Act of 1884, ch. 468, (codified as section 155 of the Public Local Laws of Talbot county) required the clerk of the Circuit Court for Talbot county to issue a license to any person who had been a resident of the county for twelve months next preceding his application, which license authorized him to employ any boat of the capacity of ten tons or less in taking oysters with dredge, scoop, or scrape in the waters of Choptank river; and provided that the waters of Talbot county lying within certain designated boundaries should be open to the citizens of said county licensed as above mentioned. T. was indicted in the Circuit Court for Anne Arundel county on the charge that he, not having been licensed according to law, did employ a certain boat called a "bugeye" in taking oysters with a "scoop" within the waters of Chesapeake Bay, and not within the body of any county. T. pleaded to the jurisdiction of the Court, and averred in his plea that he was a citizen of Talbot county, and had been a resident thereof for more than twelve months next preceding the taking of the oysters, and that the place where the oysters

Taylor *vs.* State.

were taken was within the waters of Talbot county, opposite and to the westward of Tilghman's island, and not more than a mile and a half therefrom, and inland from a line drawn from Sharp's island to Poplar island, and that he was duly licensed according to law by the clerk of the Circuit Court for Talbot county to take oysters at the place aforesaid with scrapes and dredges. HELD :

1st. That the plea did not show distinctly that the place where the boat was employed in taking oysters was within the limits of Talbot county.

2nd. That the averment that it was not more than a mile and a half to the westward of Tilghman's island, was sufficient, because there were points much less than half a mile to the westward of that island, which were not in Talbot county, but in Chesapeake Bay.

3rd. That although it averred that the place was inland from a line drawn from Sharp's island to Poplar island, such line was not one of the boundaries of Talbot county, and therefore this location of the place did not show that it was within the limits of the county.

4th. That if any offense was committed on the Chesapeake Bay, not within the body of any county, the offender might be tried in any county in which he might be arrested, or into which he might be first brought.

5th. That the plea to the jurisdiction was properly overruled.

On an indictment in A. county for taking, without a license, oysters in the waters of Chesapeake Bay, and not within the body of any county, the defendant had a right to show that he was a citizen of T. county, and had a license from the clerk of the Circuit Court for said county authorizing him to take oysters from the waters thereof, without stating in advance that he would prove that the oysters were taken in the waters covered by the license.

APPEAL, AND APPEAL AS UPON A WRIT OF ERROR, from the Circuit Court for Anne Arundel County.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, PAGE, ROBERTS, MCSHERRY, BOYD and BRISCOE, J.

*William E. Stewart,* and *Joseph B. Seth,* for the appellant.

*E. C. Gantt, State's Attorney of Anne Arundel County,* and *John Prentiss Poe,. Attorney General,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

Greenleaf Taylor was indicted in the Circuit Court for Anne Arundel county on the charge that he, not having been licensed according to law, did employ a certain boat called a bugeye in taking oysters with an instrument called a "scoop," within the waters of Chesapeake Bay, and not within the body of any county. He pleaded to the jurisdiction of the Court, and averred in his plea that he was, and for eighteen years had been, a citizen of Talbot county, and had been a resident thereof for more than twelve months next preceding the taking of the oysters, and that the place where they were taken was within the waters of Talbot county, opposite and to the westward of Tilghman's island, and not more than a mile and a half therefrom, and inland from a line drawn from Sharp's island to Poplar island, and that he was duly licensed according to law by the clerk of the Circuit Court of Talbot county to take oysters at the place aforesaid with scrapes and dredges.

The State demurred to this plea, and the Court sustained the demurrer, and overruled the plea. Thereupon the traverser pleaded not guilty, and after conviction and sentence, took an appeal to this Court, having first taken an exception to a ruling of the Court at the trial. He also filed a petition and obtained an order for the transmission of the record to this Court as upon a writ of error.

The traverser is not amenable to the jurisdiction of the Circuit Court for Anne Arundel county for an offense committed within the body of Talbot county. The plea to

the jurisdiction avers that the boat was employed in taking oysters within the limits of this county, east of its western boundary. The boundaries of the county are defined by legislative enactment. The Act of 1706, chapter 3, reads as follows: "From and after the 1st of May, 1707, the bounds of Talbot county shall contain Sharp's island, Choptank island and all the land on the north side of Great Choptank river, and extend itself up said river to Tuckahoe bridge; and from thence with a straight line to the Mill, commonly called and known by the name of 'Swetman's Mill'; and from thence down the south side of Wye river to the mouth thereof, and from thence down the Bay (including Poplar island) to ·the first beginning; also Bruff's island in Wye river." We are at present more particularly concerned with the boundary from the mouth of Wye river; it is described as running thence "down the Bay (including Poplar island) to the first beginning." According to its literal terms, it must be run so as to include Poplar island; that is, it must be run on its outer or western side. In this way, only, can the waters between Poplar island and the mainland be comprehended within the territory of Talbot county. But that they are so comprehended ought not to be regarded as a matter of doubt. The Act of 1884, chapter 468 (codified as section 155 of the Public Local Laws of Talbot county), requires the clerk of the Circuit Court for Talbot county to issue a license to any person who had been a resident of the county for twelve months next preceding his application, which license authorizes him to employ any boat of the capacity of ten tons or less in taking oysters with dredge, scoop or scrape in the waters of Choptank river; and it then provides that the waters of Talbot county lying between Black Walnut point and a line drawn from Tilghman's point to the southwest point of Parson's island shall be open to the citizens of Talbot county, licensed as above mentioned. It excepts, however, from these

waters of Talbot county, a certain designated portion of the body of water between Poplar island and the mainland; and it further provides that the waters of Choptank river lying north of a straight line running from Benonis point to Clora's point are reserved for tongmen, and that it shall not be lawful to catch oysters with scoop, scrape, dredge or similar instrument northward of said line. Now, this legislation shows three things which are important in this investigation: First, that the territory of Talbot county includes the water between Poplar island and the mainland; secondly, that it also includes other waters between Black Walnut point and a line drawn from Tilghman's point to the southwest point of Parson's island; and, thirdly, that it also includes waters south of a straight line running from Benonis point to Clora's point. This being so, the bounds described in the Act of 1706, from the mouth of Wye river " down the Bay (including Poplar island) to the first beginning," must be run in such manner as to include these waters. This is easily done. A straight line must be drawn from Tilghman's point to the most northerly point of Poplar island; the line must then run on the western side of this island until it reaches its most westerly point, and then a straight line must be drawn to the southern extremity of Tilghman's island, and thence to Clora's point, which is the most westerly point of the mainland on the north side of Choptank river. We regard this as the place denoted by the phrase " first beginning," in the Act of 1706; because this is the point where the boundaries begin to run. Previously to mentioning the land on the north side of this river, the statute states that the bounds shall contain Sharp's island and Choptank island, but they are merely mentioned as contained in Talbot county, just as Bruff's island in Wye river is mentioned. No boundaries are stated as extending from them as in the case of the north side of Choptank river. Sharp's island is in Chesapeake Bay, several miles distant from the nearest

point of the mainland. If we have stated the boundaries correctly, the plea to the jurisdiction does not show distinctly that the place where the boat was employed in taking oysters was within the limits of Talbot county. It avers that it was not more than a mile and a half to the westward of Tilghman's island; there are points much less than half a mile to the westward of Tilghman's island, which are not in Talbot county, but are in Chesapeake Bay. It also avers that it was inland from a line drawn from Sharp's island to Poplar island; but such a line is not one of the boundaries of Talbot county, and, therefore, this location of the point does not show that it was within the limits of the county. Of course, if any offense is committed on the Chesapeake Bay, not within the body of any county, the offender may be tried in any county in which he may be arrested, or into which he may be first brought. Code, Article 27, section 280. We think that the plea to the jurisdiction was properly overruled.

At the trial under the plea of *not guilty*, the traverser proved that he was the owner and master of the boat in question, and that it was of less than ten tons burden, and that he was, and for many years had been, a citizen of Talbot county; and then offered to prove that he had a license from the clerk of the Circuit Court for Talbot county, authorizing him to use his boat in taking oysters with dredge, scoop or scrape in certain waters of Talbot county, specified in the Act of 1884. On objection by the State, the Court refused to admit the evidence. If the oysters were taken in these waters, and if the traverser had the requisite license from the clerk, he had a right to prove these facts; and they would have shown that he was not guilty of the offense charged. It was essential that he should prove a license, and he was not obliged to state in advance that he would prove that the oysters were taken in the waters covered by the license. If such evidence were in his possession, he had a right to offer it afterwards. It

was his unconditional right to pursue his own order in offering his proof; and it was the duty of the Court to admit any legal evidence material to the issue, although it would not be sufficient to maintain the issue on his part, unless followed up by other proof. *Plank Road Company vs. Bruce,* 6 *Md.,* 464 ; *Patterson vs. Crowther,* 70 *Md.,* 132. The State had offered evidence tending to prove that the alleged offense " occurred at the place charged in the indictment." Surely the traverser had a right to show that it occurred elsewhere; that is to say, in the waters of Talbot county, and that he had a license which protected him in what he did. The judgment must be reversed, and the cause remanded. We will take this occasion to say that we see no reason why there should have been a writ of error in this case; inasmuch as since the Act of 1892, ch. 506, the appeal would have brought before us the question decided on the demurrer.

*Reversed and remanded.*

(Decided 14th March, 1894.)