## SARAH A. PACKHAM ET AL. *vs.* FREDERICK L. H. GLENDMEYER ET AL.

*Wills—Caveat—Admissibility of Findings of Jury on Caveat to Another Will—Evidence—Contradicting Witness—Appeal.*

Three wills were executed by a testatrix—one in 1896, another in 1902 and the third in 1903. The last will was offered for probate and a caveat thereto filed under which issues were tried involving the questions of testamentary capacity and of fraud and undue influence practiced upon the testatrix. The findings of the jury were against the caveatees and probate was thereupon refused. The will of 1902 was then propounded for probate; a caveat was filed and issues involving the questions of testamentary capacity, fraud and undue influence were sent to a Court of law for trial. Some of the caveatees under these issues

were the parties against whom the charges of fraud and undue influence were made on the former trial and who were beneficiaries under the will of 1902 as well as the will of 1903. The fact that the latter will had been set aside was in evidence before the jury on the second trial when the caveators offered in evidence the record of the Court of law containing the issues and the findings of the jury on the issues upon the will of 1903, accompanied· by the judgment of the Orphans' Court refusing to admit the will to probate. *Held*, that this evidence is not admissible in support of the allegation of fraud and undue influence in the procurement of the will of 1902, because the offer is not to prove the perpetration of fraud by the caveatees in a similar transaction, but is to show the opinion of the jury as to fraud in a particular transaction, upon the evidence they had before them, and is designed to affect the interest of others in addition to that of the parties charged with the fraud.

*Held*, further, that the finding of the jury upon the evidence before them as to the testamentary capacity of the testatrix when the will of 1903 was executed is not admissible to show that she did not possess testamentary capacity when the will of 1902 was executed.

Judgments and decrees, as against those not parties to them, are only admissible to prove *rem ipsam*, and the legal consequences thereof, but not to prove the facts upon which they are founded.

On the trial of an issue involving testamentary capacity, it was in evidence that after the execution of the will a writ *de lunatico inquirendo* was issued under which a jury found the testatrix to be of sound mind, but that the Sheriff had refused to sign the return of the jury because he considered the testatrix to be a lunatic with lucid intervals. The caveators then proposed to ask the Sheriff, who was a witness to these facts, What did you consider her? *Held*, that an objection to this question was properly sustained.

When a witness begins to answer a question in a manner not responsive thereto an objection may then be made to the answer until it is indicated what kind of evidence he is about to give.

In order to prove what testimony was given by certain witnesses in another judicial proceeding it is not competent for a party to read to a witness extracts from an alleged transcript of the evidence in that proceeding and ask him if he heard such testimony given.

A witness offered by the caveatees on the trial of issues involving fraud and undue influence was asked on cross-examination why one of the caveatees and a beneficiary under the will had not come and told the jury what he told another jury on the trial of a previous caveat to another will. *Held*, that this question is incompetent, since it did not ask for a relevant fact but invited the witness to give his speculative opinion as to the motives of the party in not being present to testify.

It is not competent to contradict a witness by showing that he had made other statements inconsistent with his testimony until a sufficient foundation for such evidence be laid.

When all the prayers offered by the appellants at the trial were granted, and those of the appellee which were granted were correct, the appellants will not be heard on appeal to object that they were entitled to further instructions. They should have asked for them in the trial Court and raised the question there.

Appeal from the Superior Court of Baltimore City (WRIGHT, J.)

*Defendants' 1st Prayer.*—That the findings of the jury in the Court of Common Pleas upon the issues framed on the paper writing dated April the 14th, 1903, are not conclusive upon this jury in its findings upon the issues framed on the paper writing dated April the 30th, 1902, but the jury are to make their findings upon the evidence in this case. (*Granted.*)

*Defendants' 4th Prayer.*—That the influence which would avoid the paper writing dated the thirtieth day of April, 1902, and offered in evidence, must be exerted to such a degree as to amount to force or coercion destroying free agency. It must not be the influence of affection or attachment or the mere desire of gratifying the wishes of another, for that would be a very strong ground in favor of a testamentary act ; and there must be satisfactory proof that the said paper writing was obtained by coercion or by importunities which could not be resisted, so that the motive was tantamount to force or fear. (*Granted.*)

*Defendants' 10th Prayer.*—Every person of twenty-one years of age is presumed to be of sound mind and competent to make a will, and this presumption extends throughout life, no matter to what age he may live ; the onus of establishing incapacity is on the party who assails the will ; extreme old age does not of itself disqualify a person for making a will ; the law looks only to the competency of the understanding ; and neither age nor sickness nor extreme distress or debility of body will affect the capacity to make a will if sufficient intelligence remain. (*Granted.*)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*David Fowler* and *George Whitelock* (with whom was *John B. Deming* on the brief), for the appellants.

*Charles F. Harley* and *Charles T. Reifsnider* (with whom were *Benj. F. Crouse*, *Joseph D. Brooks*, *Rufus W. Applegarth*, *Emanuel W. Herman* and *Edward O. Weant* on the brief), for the appellees.

JONES, J., delivered the opinion of the Court.

This case involved the trial of issues from the Orphans' Court of Baltimore City upon a caveat to the will of Mary Polk, late of said city, deceased, and is in this Court upon appeal from the Superior Court of Baltimore City where said trial was had. The issues are four in number and to the following effect: 1st. Whether the contents of a paper wrtting purporting to be the will of the said Mary Polk and to have been executed by her on the 30th day of April, 1902, were "known by her at or before the time of the alleged execution thereof;" 2nd. Was the execution of said paper writing "procured by undue influence exercised and practiced upon her;" 3rd. Was the execution of the same "procured by fraud exercised and practiced upon her;" 4th. Was the same "executed by her when she was of sound and disposing mind, memory and understanding, and capable of executing a valid deed or contract."

The questions to be determined here are presented by eight exceptions taken to rulings of the trial Court; the last of which is to the action of that Court upon the prayers submitted on behalf of the caveatees, and all the others to rulings upon questions of evidence. The record sets out the testimony adduced by the respective parties at the trial with much detail; and the briefs of counsel deal largely with the facts. There appears in this testimony a conflict that presented questions that fell within the exclusive province of the jury for decision. We are concerned with it here only so far as it may be necessary to have reference to it to deal intelligently with the legal questions raised by the exceptions.

It was in evidence that the testatrix died in the spring of
the year 1903. In her lifetime she had executed three wills—
one dated in October, 1896, one the 30th of April, 1902, and
the last the 14th of April, 1903. At the death of the testa-
trix this last will was offered for probate. A caveat was filed
to the same by the caveators in the case at bar together with
five of those who appear in this case as caveatees. The cavea-
tees to the caveat of the will of April, 1903, were six of the
eighteen caveatees in the case at bar. Upon the filing of the
caveat to the will of 1903 issues were sent to the Court of
Common Pleas in Baltimore City for trial. The result was a
finding upon certain of the issues in favor of the caveators in
that case and a judgment, upon the findings of the jury, by
the Orphans' Court of Baltimore City refusing to admit the
said will to probate and adjudging that the same was "not the
last will and testament of said Mary Polk." Thereupon the
will, here in controversy, of 1902, was produced and offered
for probate, the proceedings with reference to which are here
before us for review as already indicated. At the trial of the
issues upon the caveat in this case after the caveatees had pro-
pounded the will, the caveators offered in evidence the will of
1903, which had been set aside and in connection with it made
the following offer of evidence: "We offer in evidence the
record from the Court of Common Pleas, certified to the
Orphans' Court of Baltimore City containing the issues and
the findings on the issues upon the will of Mary Polk of 1903,
accompanied by the judgment of the Orphans' Court refusing
on those findings to admit the will to probate;" and stated the
title of the case showing who were the caveators and who the
caveatees. To this offer the appellees made objection which
the Court sustained and this is the subject of appellants' first
exception. It may be said in this connection that it was ad-
mitted by the appellees that the will of 1903, referred to in
the foregoing offer of the appellants, "was set aside by a jury
in the Court of Common Pleas in October, 1904;" and the
record discloses that, later in the trial, the judgment of the
Orphans' Court upon the findings of the jury in the Court of

Common Pleas, the purport of which has been given, was in evidence without objection. This judgment of the Orphans' Court established conclusively the *status* of the will of 1903 for whatever effect that could have in the case. This is conceded, and if not conceded, it is a proposition that could not well admit of dispute.

The offer of the appellants of the evidence in question was the bald offer of it without indicating any particular purpose therefor or offering to follow up or connect the proffered evidence with other evidence that might go to affect its admissibility if, in itself, it was not admissible. The evidence having been offered generally therefore, the inquiry is was it admissible for any purpose, other than that of which the appellants got the benefit, if benefit it was to them, by the admission of the appellees and the having in evidence the judgment of the Orphans' Court in which the proceedings referred to in their offer culminated. The evidence embraced in the offer, in question, if admissible at all, was admissible with conclusive effect only as to the *status* of the will of 1903. It cannot be pretended, and we do not understand that it is claimed, it was admissible with any conclusive effect upon any issue involved in the case at bar so as to close further inquiry in regard to it It must therefore have been offered, as only reflecting upon and tending to prove some one or more of the issues here involved. It appears that, in the proceedings referred to in the offer of evidence in question there were issues involving the testamentary capacity of the testatrix, and fraud and undue influence in the procurement of the will there in controversy; and that these issues were decided by the findings of the jury adversely to the validity of such will. It further appears that the parties, against whom the charges of fraud and undue influence were made, were named as beneficiaries in both the will of 1903 and that of 1902, and were among the caveatees in each of the caveats to those wills, though not the sole caveatees in the proceedings in respect to either.

It is urged in support of the exception under consideration that, because, under the circumstances detailed, there was,

according to the findings of the jury upon the issues under the caveat to the will of 1903, fraud in respect to the execution of that will, these findings are proper evidence going to the similar issues under the caveat to the will of 1902. Here is invoked the principle that as evidence going to establish fraud in a particular transaction similar fraud or frauds in a similar transaction committed by the party charged may be shown. The rule in respect to this is stated in 14 *Amer. and Eng. Ency. of Law*, 196, to be this : "A charge of fraud in a particular transaction cannot be proved by evidence of other and independent frauds of the party charged, though in a similar transaction, unless it appears that there is such a connection between the transactions as to authorize the inference that the frauds are both parts of a general scheme or purpose to defraud." The proposition here laid down is fortified with numerous references. It will not be necessary to examine any of these to determine how far they support the text ; nor to inquire how far the caveators here have offered evidence that the frauds here charged were "parts of a general scheme or purpose to defraud." Merely remarking that it was not a part of their offer to show this, we may allow the rule in regard to admitting evidence of other frauds to be more liberal than stated above without bringing the offer of evidence here in question within it.

What can be put in proof against a party, charged with fraud in a particular transaction, in respect to fraud in similar transactions, is the fraud—the acts of fraud—committed by him in the similar transactions. That is not the character of evidence indicated in the offer of evidence in question. That offer is of the opinion of a jury as to fraud in a particular transaction upon the evidence they had before them, and is designed to affect, not alone the parties charged with the fraud, but the interests of others who have had no opportunity to be heard in respect to the considerations that influenced the jury's findings.

In regard to the testamentary capacity of the testatrix which was passed upon by the jury, in the proceedings re-

ferred to in the offer of evidence in question, what was determined as to that was her capacity *vel non* at the very time of the execution of the will which was there in controversy. The finding had no relation to any time anterior; and was but the opinion of the jury upon evidence relating to the case in which it was adduced.

Judgments and decrees as against those not parties to them are only "admissible to prove *rem ipsam,* and the legal incidents and consequences" thereof; but "not to prove the facts" upon which they are founded. *Parr* v. *State,* 71 Md. 220; 2 *Harr. & Johns.* 402–409 (marg.) The contention of the appellants here would give to the findings of a jury a greater or larger effect in respect to their admissibility as evidence than the law gives to judgments and decrees. The ruling on the first exception must be affirmed.

The second exception was taken to the rulings of the Court below upon objection to the evidence of a witness offered in connection with the following facts stated in brief. In March, 1903, a nephew of the testatrix, one of the defendants in this case, as a legatee under the will of 1902, filed a petition for a writ of *de lunatico* to inquire into the sanity of the testatrix under which a jury was summoned and sworn which found the testatrix to be at the time of sound mind. The Sheriff refused to sign the return of the jury and in answer to a petition to compel him to sign the return said that in his opinion the finding of the jury was against the weight of evidence adduced before him and the jury; that he believed, according to the evidence the testatrix was a lunatic with lucid intervals, and for that reason he did not sign the inquisition. The Sheriff was summoned as a witness in this case by, and testified for, the appellants, that he presided at the lunacy proceedings, heard all the testimony, did not sign the inquisition and that he swore to the answer which has been mentioned. He further said he never considered the lady a lunatic; that was why he did not sign the inquisition; that he did not sign the return because in his opinion the weight of the evidence showed that she was a lunatic with lucid intervals; but that he would not

consider her a lunatic from the evidence produced before him. The counsel for appellants then asked him "Now what did you consider her?" to which counsel for appellees made objection which was sustained by the Court. It is hard to understand the point of this exception. The witness seems to have already explained his position and expressed the only opinion he had to express as to the effect of the evidence before the jury. He had not testified to any knowledge he had of the testatrix, who was not produced before the jury, and was not therefore competent to express any opinion at all. The ruling on this exception must be affirmed.

In the third exception a witness had testified that he had gone to see the testatrix in the fall of 1902 with reference to purchasing from her a piece of property; then related what took place at the interview—stating that not getting satisfactory answers from her in regard to the purchase of the property he "diverted" the conversation to other topics. He was then asked the question "in that conversation did you not go back to the subject—that was the object I understand of your visit—did you go back to that subject?" Counsel had previously indicated to the witness that he was referring to the subject of purchasing the property to which the witness had referred. To this question, which could have been answered yes or no, the witness began an answer with "I just felt"— when counsel for appellees objected to the witness proceeding and the Court sustained the objection. This is all the record discloses in reference to the grounds of this exception, and as it stands in the record no injury can be perceived as resulting to the appellants from the ruling therein. The question to the witness was not objected to and was preliminary and immaterial of itself. The witness' answer as far as it proceeded was not responsive to the question, and the counsel for the appellees had the right to stop him until it was indicated what was the character of the evidence he was about to give. This is not made to appear in the record. We are therefore, of course, unable to perceive any ground for reversing this ruling and it must be affirmed. The fourth exception was abandoned in this Court.

In the fifth exception counsel for the appellants stated "I have in my hand what purports to be a transcript of the testimony taken in March, 1903, by the Sheriff's jury in the lunacy matter entitled '*Ex parte Mary Polk*,' and I propose to read from this testimony to the witness on the stand, certain extracts from the testimony of Nelson H. Bankard, Mollie C. Meyers and Susan M. Brownley and Harvey C. Freeman, testifying on behalf of the petitioner against Mrs. Polk and ask the witness whether he had heard that testimony given." Objection was made to this offer by the appellees and sustained by the Court. This ruling was manifestly proper. The proposition was to put before the witness what "*purported*" to be "*extracts*" from the testimony given, upon the occasion named, by the witnesses named, and afford him the opportunity to say that as a matter of fact the testimony was given just as it purported to have been from the transcript that was being used. The obviously proper course would seem to have been, in seeking to introduce the testimony, to have interrogated the witness as to whether he was present when the witnesses, to whom the offer referred, testified and let him give the testimony in regard to what the witnesses said from his own recollection; or if he was to use memoranda at all to use such as he had made himself or that of the accuracy of which he had knowledge. Instead of this it was proposed that he should be aided, in giving his testimony, by a purporting transcript of the testimony referred to in the offer in question without any evidence, as a foundation for its use, of the source from which it came, or how it was made or whether it even professed to be accurate. This is sufficient to dispose of the exception. In disposing of the exception on this ground, however, it is not to be understood that it is meant to imply that the proposed testimony would have been admissible if the infirmity in the offer, which has been referred to, had been obviated. It is only meant that in the state of the record it is unnecessary if not inappropriate to pass upon other grounds which have been suggested why the ruling in the exception in question should be affirmed.

In the sixth exception a witness called by the appellees was asked upon cross-examination to state, if she knew, why one of the caveatees and a beneficiary under the will had not come and told the jury in this case "what he told the last jury." This does not appear to have been proper cross-examination as urged by counsel for the appellees. The question, however, was otherwise objectionable. The party whose absence the witness was asked to account for was one against whom was the charge of fraud and undue influence set up to invalidate the will; and the question was asked with a view to connect the absence of the party with the fraud so charged. The question did not ask for a relevant fact but invited the witnesses' opinion; and to have permitted an answer the witness would have been allowed to speculate as to the reason and motives of the party in not being present to testify.

In the seventh exception it appears there was a question put to a witness called on behalf of the appellants in rebuttal with a view to contradiction of a statement made by one of the witnesses for the appellees in giving his testimony by showing that he had made other statements inconsistent with that made on the stand. Upon objection the Court ruled that a sufficient foundation had not been laid for the question. The record does not show that any foundation was laid for the question; nor does it show that the question related to anything that was at all material.

The eighth and last exception is to the ruling of the Court upon the prayers. Of these the appellants offered six and the appellees eleven. The Court granted all of the prayers offered on both sides. The appellants excepted to the granting of the prayers of the appellees. A careful consideration of the objections made to the prayers of the defendants (appellees) fails to convince us of the soundness of such objections. They each and all affirm propositions that have frequently received the approval of this Court. The criticism of the appellants of the instructions granted at the instance of the appellees was directed more particularly to the first, fourth and tenth of these. The objections urged to the first prayer are

disposed of by what has been said in considering the first exception. With respect to the criticism of other prayers of the appellees it may be said that the instructions granted, taken as a whole, would seem to have put the case to the jury, upon the law, in every aspect arising upon the evidence, in a way to enable them to fairly ard intelligently apply proper legal rules to the consideration of the evidence before them. It does not seem to be questioned that all of the prayers of the appellees, in themselves, announce sound and correct legal propositions as to the issues the jury were to try.

The claim of the appellants seems to be that in certain aspects of the case upon the issues they were entitled to further instructions. The Court, if it believed the case fairly submitted to the jury upon the instructions submitted by the parties and granted by it, was under no duty to grant further instructions of its own motion. If, therefore, the appellants believed they were entitled to further instructions upon any of the issues in the case it would seem that it was their duty to have asked for these in the trial Court and to have raised the question there ; and not to present such question for the first time in this Court. They presented prayers satisfactory to themselves upon every issue before the jury and the Court granted them. It is not claimed that the Court granted any instruction inconsistent with these ; and if it is so claimed it does not so appear. It is not perceived how, under circumstances here appearing, from the granting of other prayers, admittedly embodying correct legal propositions as to the issues before the jury, the appellants could have sustained any injury in the presentation of the case to the jury ; or how they can, here, put themselves in the attitude of having been refused instructions they were entitled to have.

In consequence of the reasons assigned all of the rulings of the trial Court in the case will be affirmed.

*Rulings affirmed.*

(Decided April 25th, 1906.)

McSHERRY, C. J., dissented.