IDA F. STOCKSDALE, Administratrix,

*vs.*

THOMAS S. JONES and FRANCES S. JONES,
His Wife.

*Bills of particulars: must be specific.  Offers of additional evidence: opening statements of counsel.  Wills: testamentary capacity; mental capacity; evidence, before and after.*

A bill of particulars ought to be specific, like an account filed under a speedy judgment act.  p. 179

A bill of particulars for "the money received by the defendants from the plaintiff's intestate, to wit," gives no information as to what was the nature of the claim.  p. 178

A party can not offer all of his evidence at once, and when he tenders that which is legal and material, it is the duty of the court to receive it, and it can not require him to state in advance what other proof is intended to be offered.  p. 182

Sometimes it is incumbent on a party to accompany an offer of evidence with a proffer to follow it up with other evidence; but that is only where it is not itself admissible, and in order to make it so that the other evidence has to be introduced.  p. 182

What is said in the opening statement of counsel can not of itself be taken as proffer of additional evidence.  p. 182

In will cases where the question is whether the alleged testator was capable of making a valid deed or contract at the time the will offered for probate was executed, evidence of his mental condition before and subsequent to the execution of the paper is admissible for the purpose of reflecting on the question.  p. 183

In a trial of issues of testamentary capacity, the only proof offered that the testator could not make a valid deed or contract was the record in the Orphans' Court as to a caveat to the will; the said record threw no light upon the question of the testator's capacity; and it was *held,* that a prayer taking the case from the jury presented no error.          p. 185

*Decided June 20th, 1918.*

Appeal from the Circuit Court for Carroll County. (Moss, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Guy W. Steele,* for the appellant.

*Theo. F. Brown* and *F. Neal Parke* (with whom was *Jno. Milton Reifsnider* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

The appellant sued Thomas S. Jones and Frances S. Jones on the common counts. There was a demand for a bill of particulars, and one was filed as follows: "To money *loaned* to defendants by plaintiff's intestate, to wit: on or about November 13, 1914, $500.00, on or about November 30, 1914, $1,800. And to interest thereon." At a later term leave was granted the plaintiff to amend the bill of particulars and an amended one was filed. In place of the language used above it read: "To money *received* by the defendants from the plaintiff's intestate, to wit;" and then follows the amounts as stated in the original bill of particulars. An exception was filed to that, which was sustained. The plaintiff then filed a second amended bill of particulars as follows: "The defendants are indebted to the plaintiff for money had and

received from the plaintiff's intestate for the use of the plaintiff's intestate, as follows." The amounts and dates are the same as those set out above. Issue was joined on the general issue pleas and a plea of the statute of limitations, and the case proceeded to trial, but the plaintiff entered a *non pros* as to Frances S. Jones. There are six bills of exception—the first five embrace rulings on evidence, and the sixth was to granting a prayer: "That under the pleadings and evidence in this case there is no legally sufficient evidence to enable the plaintiff to recover and the verdict of the jury must be for the defendant." That prayer was granted, and verdict rendered accordingly. From the judgment entered thereon this appeal was taken.

The first point relied on by the appellant is the ruling of the Court on the exception to the amended bill of particulars. There can be no doubt about the correctness of that ruling. "To money *received* by the defendants from the plaintiff's intestate, to wit," etc., gave the defendants no information as to what the suit was about, or how it was claimed to have been received. It might have been a gift, a loan, or, as stated in *Mueller* v. *Michaels,* 101 Md. 188, in reference to the particulars there filed in a suit under the Practice Act ("For cash money received from the plaintiff in the month of June, 1904, by the defendants in the sum of $285.00"), "It may have been received in the payment of a debt due the defendants; it may have been paid to them under some mistake; it may have been received to be delivered to some third party; or it may have been received by the defendants as a stake to be held to abide the determination of some event. In what way the alleged indebtedness of the defendants arose out of the receipt of the money is left wholly a matter of speculation." In *Cairnes* v. *Pelton,* 103 Md. 40, 44, it is said: "The office and legal effect of a bill of particulars is to inform the opposite party of the precise nature and extent of the claim which the plaintiff intends to rely upon under each and every count of the *narr.* and to confine his evidence

to the claim thus stated." That a bill of particulars ought
to be specific, like an account filed under a Practice or Speedy
Judgment Act, may at least be implied from section 24, sub-
section 107, of Article 75 of the Code, as amended by the
Act of 1914, Chapter 378.

The most important question in this case is presented by
the first bill of exceptions—whether the record from the
Orphans' Court of Carroll County was admissible in evidence.
Jacob Webster Caple executed a last will and testament on
September 14, 1914, and died November 10, 1915. On
November 19th, 1915, Ida F. Stocksdale, his only daughter,
filed in the Orphans' Court a petition in which she said she
had heard there was in existence a paper writing purporting
to be his last will and testament, and asked the Court not to
probate it until she had a reasonable time for an examina-
tion of it and the preparation and filing of a formal caveat
thereto. On November 22nd Thomas S. Jones, the appellee,
presented the will to the Orphans' Court and declared that
the instrument of writing was the true and whole last will
and testament of said Caple; that he had found it among
the private papers of the deceased and did not know of any
other will or codicil. On November 26th Mrs. Stocksdale
filed a caveat alleging testamentary incapacity, undue influ-
ence, fraud and other grounds, and on November 30th a sum-
mons was issued for the devisees and legatees named in the
will, including Frances S. and Thomas S. Jones, which was
returnable December 14, 1915. All were returned sum-
money and on December 14 the trustees of the Sandy Mount
Methodist Protestant Church in Carroll County (to whom
he had left $500.00 to be invested and the income to be used
for the care of a lot in the church burying ground) and
Lewis W. Caple, the executor named, appeared in open Court
and verbally declined to take any action in the matter. The
others did not appear or answer.

The will left Mrs. Jones $500 "for her care and trouble
in nursing me and my wife during her illness" and Thomas

S. Jones $500 "in consideration of his care and trouble in helping to nurse me and my wife during her illness, and also in caring for and feeding my stock." Item 3 is—

> "And, whereas, the said Thomas S. Jones and Frances S. Jones, his wife, have promised to board, wash and iron and care for me during the balance of my life, I do hereby bequeath to them the sum of Two Hundred and Fifty Dollars ($250.00) for each and every year or proportionate part thereof, that they may so board, wash and iron and care for me, in the event that I have not already paid them in my lifetime, the sum to be paid in full payment for said board, washing and care."

By Item (4) he left $500 to the trustees of Sandy Mount Methodist Protestant Church, as stated above, and he gave his daughter $5.00 "and no more" in Item (5). By Item (6) he left all the rest and residue of his estate to his two grandsons, Vernon W. Stocksdale and Howell Kelley Stocksdale, and he then appointed Lewis W. Caple his executor.

Nothing was done until May 9th, when a summons for witnesses was issued returnable on May 12th, when the Court heard testimony of witnesses produced on the part of the caveator. On May 26th, 1916, the Court met for the further consideration of the case and passed a decree in which, after reciting the proceedings, amongst others that no party defendant had filed an answer, and "the Court being satisfied that at the time said paper writing was executed by the said Jacob Webster Caple he was not of sound and disposing mind and capable of executing a valid deed *and* contract, and that said paper writing is not the last will and testament of the said Jacob Webster Caple, deceased," the Court "adjudged, ordered and decreed that the said Jacob Webster Caple died intestate, leaving as his next of kin and heir at law his only child, the petitioner, Ida F. Stocksdale, and that the probate of the said paper writing * * * be and the same is hereby refused."

This exception shows that at the trial of the case in the
Circuit Court the plaintiff's attorney, in his opening state-
ment to the jury, announced that "he proposed to show that
during the lifetime of Jacob W. Caple, the defendants,
Thomas S. Jones and Frances S. Jones, obtained money from
him while he was not capable of making a valid deed or con-
tract, and that he would prove he was not capable of making
a valid deed or contract by the records of the Orphans' Court
for Carroll County." The plaintiff called the register of
wills, who produced "the original papers in the matter of a
caveat to the supposed will of Jacob Webster Caple, and a
transcript of the docket entries in that case before the
Orphans' Court of Carroll County," which included the peti-
tion of Ida F. Stocksdale, of Nov. 19, 1915, the will and
depositions of the subscribing witnesses, the caveat, the decree
and the docket entries. The first exception is thus worded:

"Whereupon objection was made to them being
offered in evidence, whereupon counsel for the plain-
tiff made the following offer: These papers offered in
evidence, with a transcript of the docket entries in the
matter of the caveat of Ida F. Stocksdale to the last
will and testament of Jacob Webster Caple, deceased,
are

"And the defendants renewed their objection to the
introduction in evidence of said papers (but not on
the ground that the original papers were offered and
not a certified copy thereof), although coupled with
the aforegoing offer of proof, and the Court sustained
their objections and refused to allow said original pa-
pers and the transcript of the docket entries to be
offered in evidence, to which ruling of the Court the
plaintiff excepted," etc.

Apparently it was intended to set out the papers and docket
entries after the word "are" above, but however that may be
no proffer to accompany or follow up the record from the
Orphans' Court with evidence as to the mental condition of
the deceased at the time the checks were given is disclosed

in the Record in this case. What was said in the opening statement of counsel can not be said to be such proffer, although it does show the ground the appellant was relying on for recovery. What is said in an opening statement of counsel can not be treated as a proffer of additional evidence. *Davis* v. *Calvert,* 5 G. & J. 310, 38 Cyc. 1327. Nor do we find anything to justify the statement in the appellant's brief that the Court refused to receive the record of the Orphans' Court, "as well as any evidence showing the mental condition of the plaintiff's intestate."

The question, however, is whether any proffer of other evidence was necessary in order to introduce the Orphans' Court record. Sometimes it is incumbent on a party to accompany an offer of evidence with a proffer to follow it up with other evidence, but that is only where it is not of itself admissible and in order to make it so other evidence has to be introduced. As has been said in several cases in this Court, a party can not offer all of his evidence at the same time, and when he tenders that which is legal and material to the issue, it is the duty of the Court to receive it, and it can not require him to state in advance what other proof he intends to offer. *Patterson* v. *Crowther & Boone,* 70 Md. 124, 132; *Met. Life Ins. Co.* v. *Dempsey,* 72 Md. 288; *Scaggs* v. *Reilly,* 89 Md. 162, or, as was said in *Taylor* v. *State,* 79 Md. 130: "It was his unconditional right to pursue his own order in offering his proof; and it was the duty of the Court to admit any legal evidence material to the issue, *although it would not be sufficient to maintain the issue on his part, unless followed up by other proof* (italics ours). If it *alone* is not sufficient to sustain the case, the Court can on application so instruct the jury. *Plank Road Co.* v. *Bruce,* 6 Md. 457.

This record, if standing alone, would undoubtedly not be sufficient to prove that at the dates of the checks in November, 1914, the deceased was not mentally capable of making or giving them, but, as has often been held in will cases,

while the question is whether the alleged testator was capable
of making a valid deed or contract *at the time the will was
executed,* evidence of his mental condition prior and subse-
quent to the execution is admitted for the purpose of reflect-
ing on that question. *Davis* v. *Calvert,* 5 G. & J. 300;
*Brashears* v. *Orme,* 93 Md. 442; *Harris* v. *Hipsley,* 122 Md.
418.     We entirely agree with the appellee that because a
man is not capable of making a will in September it does
not follow that he can not give valid checks in November.
That depends upon circumstances, and in this case there is
not even anything to show for what the checks were given.
It is also true that there is no presumption that insanity,
which is shown to have existed at one time, continued, unless
it was proven to be of a permanent character, or the party
was suffering from some disease which was progressive, or
he had been regularly found insane by an inquisition which
was still in force.    But that does not seem to us to meet the
whole question, and the record was in our judgment admis-
sible.    It was, however, not conclusive, and by itself was not
even evidence of the mental condition of the deceased when
the checks were given, or sufficient to show that he was incap-
able of giving valid checks at those times.    Nor can we agree
with the appellee that the case of *Packham* v. *Glendmeyer,*
103 Md. 416, is conclusive of the question now being con-
sidered.    There a will executed in 1903 had been set aside
on the findings of a jury that there was fraud, undue influ-
ence and incapacity to make the will.    A will executed in
1902 was then offered for probate, to which a caveat was
filed, and the findings on the issues upon the will of 1903 and
the judgment of the Orphans' Court were offered in evidence
at the trial of the issues as to the one of 1902.    Some of the
caveatees in the contest over the will of 1902 were not par-
ties to the caveat of the will of 1903.    The Court held that
the finding of the jury upon the issue as to fraud under the
will of 1903 was not admissible, and then said: "In regard
to the testamentary capacity of the testatrix which was passed

upon by the jury, in the proceedings referred to in the offer
of evidence in question, what was determined as to that was
her capacity *vel non* at the very time of the execution of the
will which was there in controversy. The finding had no
relation to any time anterior; and was but the opinion of the
jury upon evidence relating to the case in which it was ad-
duced. Judgments and decrees as *against those not parties*
to them are only 'admissible to prove *rem ipsam*, and the legal
incidents and consequences thereof; but not to prove the
facts upon which they are founded. *Parr* v. *State,* 71 Md.
220; *Dorsey* v. *Gassaway,* 2 Harr. & Johns, 402-409. The
contention of the appellants here would give to the findings
of a jury a greater or larger effect in respect to their admis-
sibility as evidence than the law gives to judgments and de-
crees."

It will thus be seen that the Court had in mind in that
case that some of the parties to it were not parties to the
first proceeding. In this case both Mr. and Mrs. Jones were
parties to the caveat and there would seem to be no doubt
that they were bound by the decision made by the Orphans'
Court—that is to say, that the deceased was not capable of
making a valid deed or contract on September 14, 1914.
Of course, it was not conclusive against them as to the capac-
ity to draw the checks, but it was admissible evidence as
reflecting upon that, if there was other evidence tending to
show the lack of capacity to give the checks. The record
offered in *Packham* v. *Glendmeyer* was not admissible against
those who were not parties to it, and hence was necessarily
rejected as to all, as the verdict of the jury would be as to
the validity of the will of 1902, and it could not be said
the record of the proceedings as to the will of 1903 was ad-
missible as to some and not for other caveatees.

In the discussion of the admissibility of judicial records
in *Reynolds on Trial Evidence,* pages 52-61, the learned
author points out that every record of a Court consists of two
distinct parts, denominated in *Best on Evidence,* sec. 590,

as "the *substantative* and judicial portions," and he explains
them.   He says on page 55 that the judicial portions of
records (the part in which the Court expresses its judgment
or opinion on the matter) are "admissible and conclusive as
between the parties and their privies," and in further expla-
nation of that it is stated that every judgment rendered by a
Court having competent jurisdiction over the parties and the
subject matter is, *as between the parties,* "conclusive proof of
all facts actually decided by the Court, and appearing from
the record itself to be the ground on which the judgment was
based, unless evidence was admitted in the action in which
judgment was delivered, which is excluded in the action in
which that judgment is intended to be proved, or *vice versa.*"
The case of *Gridley* v. *Boggs,* 62 Cal. 190, cited by the appel-
lee, does not seem to us to meet the question spoken of above.
The parties sought to be affected by the determination in the
former proceeding do not appear to have been parties to that
case.   Moreover, the decision in *Gridley* v. *Boggs* seems to
have been largely influenced by a statute in force in that
State.

But notwithstanding what we have said, the difficulty in
this case is that there was no evidence offered which could be
said in any way to reflect upon the mental condition of the
deceased, excepting that record.   We can not understand why
evidence was not introduced, if the appellant had it, but we
find no evidence whatever in the Record which throws any
light on that question, excepting so far as the Record may
do so.   The Record itself was not legally sufficient to show
incapacity of Mr. Caple at the time the checks were given,
and hence we are forced to the conclusion that there was no
error in the Court granting the prayer taking the case away
from the jury, even if the Record of the Orphans' Court be
considered and treated as in evidence, and as a result of that
conclusion there is no reversible error in rejecting the Record.

There can be no doubt about the correctness of the ruling
in the second exception.   The question was: "Now, Mr. Stem,

that money was afterwards paid out?" Mr. Stem was the officer of the bank where the check was deposited by Jones, who had depositd it to his own crdit. In the appellant's brief it is said that question was asked "to show the conversion by the appellee to his use of the $1,800," but it was certainly not necessary for the plaintiff to introduce it to show a conversion, as that was already shown by the appellee's depositing the check to his own credit in the bank. Moreover, it was later proven by the witness Benson that about December 1st, 1914, Jones paid him $1,800 and told him he got it from Mr. Caple, and therefore the appellant could not have been injured by the refusal of the Court to allow the question to be answered.

In regard to the questions in the third, fourth and fifth bills of exception, it is only necessary to say that they did not in any way reflect upon the competency of the deceased to give checks, or tend to show any right of the plaintiff to recover, and under our view of the instruction given, it would be useless to discuss them.

We have not thought it necessary to discuss the pleadings or the form of the bill of particulars, but whatever the theory of the latter was, there is no legally sufficient evidence to sustain it. The only difference between it and the ordinary count for money had and received is that the bill of particulars states that it was received from the plaintiff's intestate. There is no evidence whatever to show that it was received for the use of the plaintiff's intestate, which is a very material part of the count and in this case of the bill of particulars.

From what we have already said, it will be seen that in our judgment there was no error in granting the defendants' first prayer. It follows that the judgment must be affirmed.

*Judgment affirmed, the appellant to pay the costs.*