*1810.*

*Wood*
*vs*
*Grundy, &c.*

———————

WOOD vs. GRUNDY & THORNBURGH's Lessee.

APPEAL from *Baltimore* county court. *Ejectment* for a lot situate in the city of *Baltimore*, in that part of the

*JUNE.*

The proceedings of the commissioners of bankruptcy are not evidence to prove the act of bankruptcy committed by the bankrupt—the proceedings being *res inter alios acta*, and not evidence according to the principles of the common law, and not made evidence, by the laws, of the *U. S.* which relate to this subject.

Where the demise in a declaration in ejectment was stated to be on the 1st of January 1801, and the conveyance offered in evidence, under which the plaintiff claimed, was dated on the 23d of February 1802—*Held*, that an ejectment is an action to try the right of possession to the land in controversy. The lease, entry and ouster, laid in the declaration, are fictitious, and substituted in the place of a real lease, actual entry and ouster. The time of the demise is matter of substance, and not form, and the plaintiff must show a title in his lessors anterior to the time of the demise, because without such title they could not make a real lease.

In an action for the *mesne profits*, the plaintiff can recover profits from the time of the demise, without showing title, the ejectment being concluded by it. But if he claims profits prior to the time of the demise, the defendant may controvert his title.

The court will allow the plaintiff in ejectment to amend his declaration, by changing the time of the demise, at any time before verdict, on such terms as will impose no hard ships on the defendant.

The *second section* of the act of 1809, *ch* 153, relative to the amendment of judicial proceedings, does not extend to matters of substance, but to form.

The plaintiff in ejectment gave in evidence a grant to E L in 1673, for a tract of land called L L; also an act of assembly passed in 1702, which recited that J E H had set forth that he was seized and possessed of L L, &c. and directed that L L should be laid out and form part of B town; also that lot No 687 was part of L L. so claimed by J E H, and laid off as part of the said town; that the lot was conveyed by J E H to H D, who possessed it from 1792 to 1795, when he conveyed it to A B, who also possessed it until 1802, when he conveyed it to the lessors of the plaintiff—*Held*, that the plaintiff had no right to recover, there being no title deduced from the grantee of L L to J E H, and there being no possession proved in A B, and those under whom he claimed, sufficient to entitle the plaintiff to recover without showing title.

city called *Howard's* late addition to *Baltimore*, and known on the plot thereof by No, 687, &c. The *demise* in the declaration was stated to be on the 1st *of January* 1801, The general issue was pleaded.

1. The plaintiff, (now appellee,) at the trial, produced and had witnesses sworn to prove that *Aquila Brown*, of *Baltimore*, merchant, was a person using trade and commerce at the said place, and that he was indebted before and on the 20th of February 1802, and afterwards, to *Nicholas Norris*, in a sum exceeding $2000; that *Norris* on the 22d of February 1802, sued out a writ of *capias ad respondendum* against *Brown*, which was returned *non est.* And the defendant, (now appellant,) having offered evidence to prove that the debt due to *Norris* had not become due or payable before or at the time when the writ of *capias ad respondendum* was issued, the plaintiff further produced and showed to the court the commission, qualifications, depositions and proceedings, before the commissioners, and their judgment thereon, as herein after mentioned, and offered to read the judgment of the commissioners to the jury, to prove that *Brown* had committed an act of bankruptcy before the issuing of the said commission; and further offered to prove that *Norris*, in the petition and writ aforesaid mentioned, was one and the same person, and that *Brown*, in the writ and judgment aforesaid mentioned, was one and the same person. The defendant objected to the judgment of the commissioners being read in evidence to show that *Brown* had committed an act of bankruptcy, as in the said judgment stated. But the court, (*Nicholson* Ch. J ) was of opinion, that the judgment of the commissioners was *prima facie* evidence of the bankruptcy, and might be read to the jury to support the title of the assignees of *Brown*; but that if the jury should be of opinion, that the debt from *Brown* to *Norris* was not due at the time of issuing the *capias ad respondendum*, that then the judgment of the commissioners did not prove the bankruptcy. The defendant excepted.

2, The plaintiff then read in evidence the patent for a tract of land called *Lun's Lot*, granted to *Edward Lun*, on the 20th of July 1673; also an act of assembly passed at April session 1782, entitled, "An act for an addition to *Baltimore* town, in *Baltimore* county," reciting, that *John Eager Howard* had set forth that he was seized and possessed of a great part of *Lun's Lot*, part of which had been

laid out into lots, and annexed to *Baltimore*-town, &c. He prayed a law authorising other parts of the said tract to be laid out into lots, &c. The commissioners of *Baltimore*-town were therefore required to cause the said tract of land to be surveyed and laid out into lots, &c. at the proper cost and expense of the said *Howard*, &c. The plaintiff also read in evidence the original location of said addition, made in pursuance of said law, from the original record filed in the Mayor's office of the city of *Baltimore*; and offered evidence to prove, that lot No. 687 in the said addition, on the said plot, is the same lot for which the present ejectment is brought. He also read in evidence a deed from *John Eager Howard*, in the said act mentioned, to *Henry Didier*, for the said lot, dated the 8th of October 1792; and also a deed for the said lot from *Didier* to *Aquila Brown*, dated the 15th of April 1793. He also offered in evidence, that *Brown*, in the said deed mentioned, was a person using trade and commerce at the city of *Baltimore* on the 19th of February 1802, and indebted to *Norris* in a sum exceeding $2000, and that *Norris* sued out a writ of *capias ad respondendum* against *Brown*, to recover said debt, on the 22d of February 1802; and produced and showed to the court the petition, commission, qualification, depositions and proceedings, before the commission of bankruptcy, and their judgment thereon; and read to the jury the judgment of the commissioners to prove, that *Brown* had committed an act of bankruptcy before the commission issued; and further read in evidence the appointment and qualification of the assignees under the proceedings of bankruptcy; and read in evidence the deed from the commissioners to the assignees, the lessors of the plaintiff, bearing date the 23d of February 1802; and offered evidence to prove, that the commissioners in the said deed mentioned were the same persons appointed under the commission of bankruptcy; and that the lessors of the plaintiff, and the grantees in that deed named, are the assignees under the said commission, and no other or different. The defendant then offered to prove, that the debt of *Norris* was not payable at the time of issuing the writ by him against *Brown*. The court, upon the prayer of the plaintiff, directed the jury, that if they believed the debt from *Brown* to *Norris* was due and payable at the time of issuing the *capias ad respondendum*, in the name of *Norris* against *Brown*; and also if they believed the evidence offered by the plaintiff, that then

the plaintiff is entitled to recover.   The defendant excepted.

3. The plaintiff then offered evidence to prove, that the lots, for which this ejectment is brought, was part of the land mentioned in the act of assembly aforesaid, (1782, ch. 2,) so claimed by *Howard*, and laid off into a town, and that the said lot was conveyed by *Howard* to *Didier*, and was improved by *Didier* about ten years ago, and continued in his occupation and possession until he sold it to *Brown*, who continued in possession of the lot and premises until the 22d of February 1802.   The plaintiff then prayed the opinion of the court, and their direction to the jury, that if they believed the evidence on the part of the plaintiff, that then *Brown* had a legal and valid estate in the lot on the 22d of February 1802, according to the limitations in his deed.   Which direction the court gave.   The defendant excepted.

4. The plaintiff then prayed the opinion of the court, and their direction to the jury, that the petition, commission and assignment, under the commission of bankruptcy issued against *Brown*, (which he offered in evidence,) were competent and proper to prove the facts therein mentioned, and that if the defendant does not show title to the premises in the declaration mentioned, out of *Brown*, before and on the 22d of February 1802, that then the defendant must claim subsequent to the act of bankruptcy stated in the commission; and if the jury so find, that then the assignment of the bankrupt's effects gives title to the premises in the lessors of the plaintiff, and the plaintiff is entitled to recover.   Which direction the court gave.   The defendant excepted.

5. The plaintiff further prayed the opinion of the court, and their direction to the jury, that if the defendant shows no title out of the plaintiff before the 22d of February 1802, and no conveyance from him at any time since, that then the assignment under said cause of bankruptcy is evidence of title in the lessors of the plaintiff, until some title is shown out of *Brown* before or after that day.   Which direction the court gave.   The defendant excepted.   Verdict and judgment for the plaintiff, and the defendant appealed to this court.

The cause was argued before Chase, Ch. J. Buchanan, Gantt, and Earle, J.

*Martin* and *W. Dorsey*, for the Appellant, in arguing on the *first* bill of exceptions, contended that the judgment of the commissioners, under the commission of bankruptcy, was not *prima facie* evidence sufficient to prove that *Brown* was a bankrupt under the bankrupt law of the *United States* of the 4th of April 1800. In *England*, under the bankrupt laws, the assignees in suits brought by them, are bound to prove every fact by *viva voce* evidence. The proceedings of the commissioners are not evidence even in actions to recover money due to the bankrupt; they are not evidence except in actions between parties and privies. Upon common law principles the judgment of the commissioners is not evidence for any purpose; and the bankrupt cannot be a witness to prove his own bankruptcy. They cited the bankrupt law of the *United States*, passed on the 4th of April 1800, *(3 Vol. Laws U. S.* 320.) *Bull. N. P.* 37. *Cooper's B. L.* 105, 173, 306, 307, 380. *Abbot vs. Plumbe*, 1 *Dougl.* 216. *Chapman vs. Gardner*, 2 *H. Blk. Rep.* 279. *Bateman vs. Bailey*, 5 *T. R.* 512. *Selw. N. P.* 222, 226. *Vaughan vs. Martin*, 1 *Esp. Rep.* 440. 1 *Lofft's Gilb.* 31, 32, 64, 65. *Mann vs. Shepherd*, 6 *T. R.* 79. *Field vs. Curtis*, 2 *Stra.* 815; and *Bickerdike vs. Bollman*, 1 *T. R.* 405.

On the *second* bill of exceptions they contended, that the declaration in ejectment shows that the demise was laid on the 1st of January 1801, long before the title accrued to the lessors of the plaintiff, and therefore the plaintiff could not recover. They cited *Berrington vs. Parkhurst*, 2 *Stra.* 1086. *Runn. Eject.* 86. *Bull. N. P.* 105, 106, 86, 87. 2 *Esp. Dig.* 443. 3 *Blk. Com.* 205; and *Aslin vs. Parkin*, 2 *Burr.* 668.

On the *third* bill of exceptions they contended, that the title set out did not give *Brown* a title to the lot in question; and there was no evidence that Col. *Howard* had a title to the premises by him conveyed to *Didier*, under whom *Brown* claimed.

On the *fourth* and *fifth* bills of exceptions they contended, that under the bankrupt law the whole proceedings of the commissioners, not a particular part, may be evidence for certain purposes, but that here a part only of the proceedings had been offered and admitted as evidence.

*Key*, *Harper* and *S. Chase*, jr. for the Appellee, contended, upon the *first* bill of exceptions, that the commis-

1810.

Wood
vs
Grundy, &c.

1810.

Wood
vs
Grundy, &c.

sioners were created a court of record, and with compe-
tent jurisdiction; that they acted judicially, and their judg-
ment must be a judicial act, and sufficient evidence for the
purpose for which it was admitted.     They cited *Burr.*
*Settl. Cases*, 186.     *Billings vs. Prinn & Delabore*, 2 *W.*
*Blk. Rep.* 1017.   *The King vs. Forrest*, 3 *T. R.* 38.   *The*
*King vs. The Inhabitants of*, &c. *Ibid* 380.   *Cooper's*
*B. L.* 174.   *Darby vs. Baughan*, 5 *T. R.* 210; and the
51st and 56th *sections* of the bankrupt law of the *U. S.*

Upon the *second* bill of exceptions they contended, that
an ejectment was a fictitious action, and may be moulded
by the court for certain purposes.   The demise is a matter
of form, and is an immaterial part of the declaration; and
besides, under the act of 1809, *ch.* 153, it could be amend-
ed.     They cited *Doe vs. Pilkington*, 4 *Burr.* 2449.   *Ben-*
*nett vs. Ganby*, *Carth.* 178. *Aslin vs. Parkin*, 2 *Burr.* 665.
*Small vs. Cole*, *Ibid* 1159.   *Fairclaim vs. Shaintitle*, 3
*Burr.* 1292.   *Oates vs. Brydon*, *Ibid* 1895; and the act of
1809, *ch.* 153, *s.* 3.

Upon the *third* bill of exceptions they contended, that
the act of April 1782, *ch.* 2, recites that Col. *Howard* was
seized and possessed of *Lun's Lot*, and directs that *Lun's*
*Lot* should be laid out and form a part of *Baltimore town*;
and there was sufficient evidence offered without deducing
title from the grantee of *Lun's Lot.*

Upon the *fourth* and *fifth* bills of exceptions they con-
tended, that the 56th section of the bankrupt law renders
it unnecessary to produce more than certain papers in evi-
dence.   The assignment of the commissioners was evi-
dence of all the facts therein stated; and it was sufficient
evidence against an intruder without title. ®

CHASE, Ch. J. delivered the opinion of the court.   The
court dissent from the opinions of the county court as ex-
pressed in the several bills of exceptions taken in this
case.

On the *first* bill of exceptions, the court are of opinion,
that the proceedings of the commissioners of bankruptcy
are not legally admissible as evidence in this case, to prove
the act of bankruptcy committed by *Aquila Brown*—the
proceedings being *res inter alios acta*, and not evidence ac-
cording to the principles of the common law, and not made
evidence by the laws of the *United States*, which relate to

this subject. The opinion, therefore, of the court below on this bill of exceptions is erroneous.

1810.

Wood
vs
Grundy, &c.

On the *second* bill of exceptions, the court are of opinion, that the opinion of the court below is erroneous, this court being of opinion, that it appears by the proof stated in the case that the lessors of the plaintiff below had no title at the time of the demise laid in the declaration of ejectment, but that their title, if they had any, accrued subsequently to that time.

An ejectment is an action to try the right of possession to the land in controversy. The lease, entry and ouster, laid in the declaration, are fictitious, and substituted in the place of a real lease, actual entry and ouster. The time of the demise is matter of substance, and not form, and the plaintiff must show a title in his lessors anterior to the time of the demise, because without such title they could not make a real lease.

In an action for the mesne profits, the plaintiff can recover profits from the time of the demise, without showing title, the defendant being concluded by it; but if he claims profits prior to the time of the demise, the defendant may controvert his title.

The court will allow the plaintiff to amend his declaration at any time before verdict, by changing the time of the demise, for the attainment of justice, on such terms as will impose no hardships on the defendant.

That clause of the act of last session, *(Nov.* 1809, *ch.* 153, *s.* 2,) which has been referred to, does not extend to matters of substance, but to form.

It appearing on the record that the lessors of the plaintiff had no title to the land in question, at the time of the demise, the judgment must be reversed.

On the *third* bill of exceptions, the court are of opinion, that according to the whole proof stated in the case, the plaintiff has no right to recover, there being no title deduced from the patentee of *Lun's Lot* to *John Eager Howard*, and there being no possession proved in *Aquila Brown*, and those under whom he claims, sufficient to entitle the plaintiff to recover in ejectment without showing title.

JUDGMENT REVERSED.