## WINTERS NATIONAL BANK & TR CO v MIDLAND ACCEPTANCE CORP

Ohio Appeals, 2nd Dist, Montgomery Co

No 1253.  Decided March 21, 1934

Craighead, Cowden, Smith & Schnacke, Dayton, for F. D. Schnacke, Trustee in Bankruptcy of F. H. Gessaman, Bankrupt.

Scharrer, Scharrer, McCarthy & Hanaghan, Dayton, and Donald E. Calhoun, Dayton, for the Midland Acceptance Corp.

## OPINION

By HORNBECK, PJ.

Error was prosecuted by plaintiff and the intervenor trustee in cases which are numbered 1249 and 1250 in this court. Upon presentation of the cases it was agreed by counsel that determination might be made upon the appeal case and the error cases held in abeyance.

The preliminary questions presented and which before consideration of the case on its merits must be determined favorably either to the plaintiff or to the intervening trustees, are: Does the plaintiff have the right to proceed upon the allegations of its petition? Does the intervening petitioner, the trustee of Gessaman, bankrupt, have the right to maintain his action, although the cause of action of the plaintiff be properly dismissed and finally, if the intervening trustee had not the right to maintain his action upon the original petition, may he amend and proceed in this court upon the amended petition?

We have carefully considered the questions urged and the unusually helpful briefs which have been tendered by counsel for the plaintiff, the intervening trustee and the defendant. We have, also, carefully read the two opinions of the trial judge. We have no hesitancy in holding that the plaintiff had no standing to maintain an action against the defendant upon the facts developed as to the date of the filing of the petition. The right to institute the action which the plaintiff sought to prosecute was, by the adjudication of Gessaman, a bankrupt, and the appointment of a trustee vested in the representative of all of Gessaman's creditors, the trustee.

We do not deem it necessary to cite authorities at length to support the proposition that the plaintiff was properly dismissed from the action. Remington—Bankruptcy, §2222.

A more difficult question arises on the right of the intervening trustee to maintain the action as representative of plaintiff or as representative of creditors other than plaintiff. Counsel for the trustee seems to concede that the trustee did not have the right to proceed to judgment through any rights of plaintiff but insist that as representative of other creditors he had a cause of action based upon the same transaction as set forth by the plaintiff in its petition.

There is great confusion in the available authorities on the question presented. No Ohio case cited parallels the facts in this case. **Alflen v McClenaghan, 32 Oh Ap, 43**; Higgins v McCrea (Ohio Fed.) 116 U. S., 671; **United Sales Promotion v Anderson, 100 Oh St, 58; Ohio Savings Bank & Trust Company v Strausz, 14 C.C. (N.S.), 51**, all were actions wherein at the time the petitions were filed the respective plaintiffs had causes and rights of action. It is not unusual for a party who at the time of the suit has a cause of action and right of action to be superseded by another who has the right to act for him in a representative capacity. In the instant case the plaintiff did not have a right of action at the time the petition was filed. The cause of action stated was substantially the same as set up by the trustee intervenor with the further right of the intervenor to act for and in behalf of all creditors including the plaintiff. It should be noted that the intervenor by his pleading made definite the cause of action to be the same as plaintiff, his right of action to appear for the plaintiff and all other creditors of the defendant. Summons was also issued against the defendant and service made thereon.

One case in Ohio which has not been cited by counsel for either party seems to indicate the course which we should pursue upon the pleadings and record in this case. **Van Camp v McCulley, Trustee, 89 Oh St, 1.** All of the syllabus is pertinent and we therefore quote it:

"Where a creditor of an insolvent corporation enters suit in behalf of himself and other creditors against C. and other stockholders, to compel payment into court of unpaid subscriptions to capital stock of the corporation, C. demurs on the ground that plaintiff has not reduced his claim to judgment and exhausted his legal remedies, and, pending the demurrer, a trustee of the insolvent corporation is appointed in bankruptcy. Held: The court has power in furtherance of justice to substitute the trustee as plaintiff with leave to file an amended petition and bring in another subscriber as a defendant.

"2. At a subsequent term, the demurrer still pending, the court on motion of C. struck out the former order of substitution as an irregular assumption of jurisdiction. Held: This was error.

"3. Meantime, between the order of substitution and the order to strike out, the trustee had filed his amended petition and issued summons to the new defendant, who answered. The amended petition of the trustee added matter explanatory of the

origin of the indebtedness of C. and new allegations showing the right and title of the trustee to maintain the suit. Held: Neither the substitution of the trustee as plaintiff nor his amendment to the petition changed the cause of action or the nature of the action; the case was then pending upon the amended petition, and the defendant C. was still in court pursuant to the original summons to answer to the cause of action.

"4. Nevertheless, the court heard and sustained the demurrer to the original petition and dismissed the cause. Held: This was error, and the judgment of the circuit Court overruling the judgment of the Common Pleas Court in striking out its original order and dismissing the cause, must be affirmed."

It will be noted that at the time Barnard Brothers, the original plaintiffs, instituted the action they had no right of action against the defendants. In this situation they are identical with the plaintiff in the instant cause. Thereafter a trustee in bankruptcy for the Mt. Vernon Glass Company was named and substituted as a party plaintiff. ·He was then permitted by the determination of the Appellate and Supreme Courts to proceed with the cause of action originally stated by Barnard Brothers. In the Supreme Court Judge Wilkin, in stating the propositions for determination set them forth under two headings. We quote in part. The argument of plaintiff in error is as follows:

"(2) Permission to the trustee to be substituted as plaintiff can not change the original case. The trustee merely takes the place of the plaintiff; if such plaintiff were not properly in court the substitution can not cure the defect. The trustee is entitled to maintain the suit only · after summons issued (on his precipe) and served. If the trustee is substituted for a plaintiff who had no cause of action, the trustee sues without due issuance and service of summons."

The court then says:
"Manifestly there was in the beginning, as shown by the original petition, a cause of action in somebody. If Van Camp was owing an unpaid subscription to stock of this company and the company's affairs were not wound up and liquidated, and the company was, as is alleged in the petition, insolvent, it was the duty of the subscribers to pay the money due for stock to somebody for the benefit of the company's creditors. This was a duty which the court could enforce in a case properly brought before it.

"The question is, in whom was the right to bring this suit? It was not in the creditors, Barnard Brothers, until they had put their claim in judgment and exhausted their remedies at law. The allegation of the latter fact was necessary to complete their right of action, and therefore there appears a defect in the title to the suit. The court was empowered, in furtherance of justice, to amend the proceedings by adding or striking out the name of any party, or by doing both. §11363, GC. This it did by substituting the name of the party entitled for the name of the party not entitled. This was right. L. S. & M. S. Ry. Co. v Elyria, 69 Oh St, 414; McDonald v Nebraska, 101 Fed. Rep., 171.

"As to the second branch of the argument, namely, that the substitution of parties changed the original case. The mere change of the name of the plaintiff in the title would not of course change the cause of action.

"The fallacy in the plaintiff in error's argument lies in the confusion of terms. The defect of party plaintiff affects not the cause of action, but the right of action. The right of action is in the real party in interest. The cause of action is the wrong which the real party in interest suffers. It shows a substantive or positive right which that wrong has violated. The right of action is an adjective or remedial right to invoke the court for redress of the wrong. Amending the title to the action does not in any way affect the substance of the cause of action. 1 Bouvier's (Rawle's Rev.) 295; Pomeroy's Code Remedies (4 Ed.), §452 et seq.; 1 Cyc., 642." ·

We are satisfied that this decision authorizes and requires us to permit the trustee intervenor to be substituted as party plaintiff in this court and to proceed either upon his original or amended petition. In our judgment the original petition of the intervenor is sufficient. Outside of Ohio we have examined the authorities cited by counsel.

Supporting the position of the Trustee are Norton et v Steinfeld et, (Ariz.) 238 p. 3, the 7th proposition of the syllabus reading

"Person having right may be substituted for one having no right to sue, where cause of action remains same and defendant is deprived of no defense."

The court at page 7 of the opinion quotes with approval from Consolidated Copper Co., (Ariz.) 205, p. 904, 908, wherein it was said:

"The authorities upon this subject seem to be in hopeless conflict, but the more modern and reasonable rule, as well as that prevailing in the federal courts, seems to be that, unless there is some change in the cause of action or the substitution of some new cause of action, the amendment should be allowed, and the cause be permitted to be determined upon its merits."

**47 C. J., 157.** LaBarre v Burton Schwartz Cypress Company, 53 So., 113.
Contra:
Four-S Razor Co. v Guymon, (Kan.) 217, p. 289. Therein it is said:

"A suit was brought in the name of a defunct corporation to recover damages for the conversion of the corporate property. A Trustee in Bankruptcy of the corporation intervened and prayed for an allowance out of the plaintiff's judgment. The action was abated for want of a plaintiff with capacity to sue. Held: the Trustee's intervention was also abated."

Brictson Mfg. Co. v Woodrough, District Judge, 284 Fed. 484, is one of several federal cases wherein the court was proceeding under a specific equity rule which provided that intervention shall be "in recognition of the propriety of the main procedure." Schell v Leander Clark College et, 10 Fed. R. (2d) 542, decided under above Federal Equity Rule (No. 37).

We then come to consideration of the main questions in this case: Was the transaction between Gessaman and defendant a violation of the Bulk Sales Act and in determining this question is it pertinent to inquire if any of the transactions between the aforesaid parties was a sale, transfer or assignment. If either, when was it effective as to creditors of Gessaman? At the time of the execution of the instrument referred to as a chattel mortgage or at the time it was filed?

The elaborate briefs of counsel cite cases from many jurisdictions and fairly present those for and against their claims.

Sec 11102 GC reads:

"The sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business, or the sale, transfer or assignment in bulk of the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the seller transferror, or assignor, shall be void as against the creditors of the seller, transferror, assignor, unless the purchaser, transferee or assignee demands and receives from the seller, transferror or assignor a written list of names and addresses of the creditors of the seller, transferror and assignor, with the amount of the indebtedness due or owing to each and certified by the seller, transferror and assignor, under oath, to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee or assignee shall, at least five (5) days before taking possession of such merchandise, fixtures, or merchandise and fixtures, or paying therefor, notify personally, or by registered mail, every creditor whose name and address appears in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof."

The instrument between Gessaman and defendant designated "Chattel mortgage" differs in some particulars from the language employed in such instruments but to all intents and purposes it has the import of a chattel mortgage. By its provisions the possession of the property passed to the mortgagee but by consent of the parties and their conduct the possession remained in the mortgagor. Independent of specific provision declaring possession to be in the mortgagee, it would, in the absence of terms to the contrary, have the right of possession. **Robinson, Jr. et v Fitch, 26 Oh St, 659.**

If possession had passed this would not change the character of the instrument from a chattel mortgage. Mortgages wherein the mortgagee takes possession of the chattel property are well recognized at law. §8560 GC. The effect of the mortgagee leaving the mortgagor in possession of the property in conflict with the terms of the instrument was to require the mortgagee to protect his lien to observe the provisions of §§8560 and 8561 GC and file the chattel mortgage with the Recorder of the county where the property mortgaged was situated.

It is true that in Ohio it is recognized that the interest of a mortgagee under a chattel mortgage is that of a general owner of the property mortgaged. Robinson, Jr. et v Fitch, supra.

In some states a chattel mortgage is construed to be nothing more than a lien,

Thus, we have division among the states where like Ohio a chattel mortgage is held to pass general title to the property mortgaged to the mortgagee and the other states where a chattel mortgage is regarded as a lien only.

The questions presented, namely, whether or not the transactions incident to the giving of the chattel mortgage, its filing for record and the taking of the property by the mortgagee, one or all constitute a violation of the Bulk Sales Act, are new in Ohio. Primarily, it is necessary to determine whether any of such transactions was a sale, transfer or assignment as contemplated by the Bulk Sales Act. Notwithstanding the common acceptation that a chattel mortgage passes general title to the mortgagee it is recognized as a lien and it does not meet the requirements of a sale, transfer or assignment as we commonly understand them. In the instant case the mortgagee had general title but the mortgage carried the usual proviso that the instrument would be void in the event of the compliance with its terms, namely, the payment of the note described and interest thereon. The taking of the property was referable to the authority found in the instrument and was, but the exercise of the right customarily granted in chattel mortgages.

Outside of Ohio there are many authorities germane to our questions. In an annotation to Schwartz v King Realty & Investment Co. (N. J.) 9 A.L.R., 473, the cases up to the date of the annotation are reviewed. The annotator, at the beginning of the note makes this observation:

"The decided weight of authority is to the effect that the giving of a chattel mortgage on a stock of goods for a bona fide debt does not constitute a sale, transfer or assignment in bulk forbidding such a sale or transfer in bulk of a stock in trade otherwise than in the ordinary course of business without certain preliminary proceedings."

Supporting the statement are cited cases from Arkansas, Georgia, Massachusetts, Michigan, Nebraska, New Jersey, Oklahoma, Washington and Canada.

In a supplemental annotation to Waldrop v Exchange State Bank (Okla.) 14 A. L.R., 753, the cases on the subject are brought down to the date of that annotation. There are three cases cited; one from Nebraska, one from Missouri and one from Oklahoma, the case to which the annotation is appended. Later, in another annotation to Faeth Company v Bressie et, (Kan.) 264 Pac. 1077, 57 A.L.R., 1049, the former annotations are supplemented. There the annotator adopts a statement heretofore quoted from 9 A.L.R., 473, and says further:

"Either adhering to, adopting or supporting this rule of construction are the following recent cases, * * * all of which, unless otherwise indicated, involve statutes using the words 'sale, transfer or assignment'."

Thereafter, are cited cases from United States, Georgia, Illinois, Indiana, Iowa, Michigan, Missouri, Rhode Island. We have not attempted to determine with particularity all the states that adopt the "lien" theory, nor those that adopt the "general title in the mortgagee" theory. We do find, however, that the decisions cannot, in their entirety, be reconciled upon these theories.

In Hannah v Richter Brewing Company, 149 Mich., 220, 112 NW, 713, in holding that a chattel mortgage was not a "sale, transfer or assignment" of a stock of goods in bulk within the meaning of the Michigan Bulk Sales Law of 1905, the court said:

"To find the legislative intent in construing a statute, it is proper for the court to consider the entire statute, the ordinary meaning of the words used, the object of the legislation, and the status of the law of the state in relation to the subject-matter under discussion. The terms, 'sale, transfer or assignment,' used in the entitling and in the body of the act, taken in their usual and ordinary signification, mean the disposition of the entire title of the seller. This meaning is indicated by the provision in the statute relative to notice required to be given to creditors, as follows, 'and unless the purchaser, transferee, and assignee shall, at least five days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally, or by registered mail, every creditor whose name and address are stated in said list, or of which he had knowledge of the proposed sale and of the price, terms and conditions thereof'."

"Taking this language and the other language of the act, it is apparent that its object was to regulate those sales made of an entire stock upon an immediate payment and change of possession, and which before the act might have been valid, although in fact a fraud upon creditors. To hold a chattel mortgage within the meaning of the statute, it is necessary to hold

that it is a sale within the common acceptation of that term, transferring the entire title, and entitling the vendee to immediate possession. This, by the specific terms of this mortgage, which are the same as those of chattel mortgages generally in this state, and under our decisions above cited, cannot be done."

"It is also urged that the court must hold chattel mortgages within the meaning of the act in order to remedy the mischief sought to be cured. While it is true that the act is intended to prevent certain debtors from defrauding their creditors, it is not for the courts to give the statute a construction it will not bear, because the legislature has not included within its prohibition certain transactions whereby frauds may be and undoubtedly are perpetrated. That is a matter for the consideration of the legislative branch of the government."

Waldrop v Exchange State Bank (Okla.) supra, is cited by counsel for the intervenor. An examination of the facts in this case discloses that the Supreme Court was announcing the rule that the form of the instrument could not control if the acts of the parties thereunder manifested an intent over and beyond the terms of the instrument. The form of the instrument under which the mortgagee was claiming title was that of a chattel mortgage but other transactions and writings between the parties discloses a set of facts which would have justified the jury in saying that the transactions were in fact a sale. The Nebraska and Oklahoma cases are not particularly helpful because the courts of those states hold that a chattel mortgage is nothing more than a lien.

In Aristo Hosiery Company v Ramsbottom, 46 R. I., 505; 129 Atl., 503, a Rhode Island case, the court said:

"The evil which was sought to be cured by this act was the practice of merchants who are heavily in debt, of making secret sales of their merchandise in bulk for the purpose of defrauding their creditors. The transfer prohibited by Par. 1 is by Par. 2 expressly restricted in its meaning, and does not include all transfers. It is true that, under the theory of chattel mortgages which has been adopted in this state, the legal title to the property passes by mortgage given, with the right of redemption in the mortgagor. There is thus a limited transfer effected, but the substance of the transaction is not different from that in jurisdictions where the so-called 'lien' theory, of mortgage prevails. Under either

the 'title' or 'lien' theory, a mortgage is the giving of security, and is not an absolute and unconditional transfer of property. * * * The statute is to be construed as a whole in view of the purpose of the act. So considered it is, we think, quite clear that a chattel mortgage is not such a transfer as the legislature intended to include in the act."

In re George Seton Thompson Co., Central Trust Co. of Illinois v First Nat'l Bank of Oak Park, 297 Fed., 934:

"While the question as to whether the transfer by means of a chattel mortgage comes within the provisions of the Bulk Sales Act has not, so far as we are informed, been determined by the Illinois courts, there are such fundamental differences between a conveyance by which a vendor absolutely divests himself of the title to his property, and a conveyance by a chattel mortgage which carries with it the right to repay the consideration and cancel the transaction, that it seems improbable that, if it had been any part of the legislative intent to include chattel mortgages within the prohibition contained in the act, the legislature would have included chattel mortgages by name or by some other designation that would have afforded some means of ascertaining such legislative intent."

Some states have included chattel mortgages in their Bulk Sales Acts. There is respectable authority to the effect that the giving of a chattel mortgage is a 'sale, transfer or assignment' within the purview of the Bulk Sales Acts of some states wherein the acts are substantially the same as Ohio. This is true notably in Kansas, which is a 'title' state.

We do not attempt to discuss all of the cases which counsel have cited. However, almost without exception all are found in the annotations to which we have made reference.

It is claimed that we have a situation not found in the cases which consider generally the effect of the execution of a chattel mortgage because in the instant case subsequent to the giving of the chattel mortgage there was a taking over of property by the mortgagee and a credit on the note secured, under conditions indicating that this was by tacit agreement with the mortgagor.

This would not change the relationship of the parties unless the element of bad faith appeared in the transaction. Here the note secured was manifestly far in excess

of the value of the property taken over by the mortgagee. It was taken after default. A sale of the mortgaged property would only have resulted in reducing the meager return which the mortgagee received on its mortgage note.

It is held in Schwartz v King Realty & Investment Co., (N. J.) 109 Atl., 567, that:

"A sale in bulk made by virtue of a chattel mortgage, or by the joint action of mortgagor and mortgagee, is not within the prohibition of the Bulk Sales Act of New Jersey."

The Court in Lloyd v Richman, 57 N. J. L., 385; 30 Atl., 430 says:
"The distinction we make, under the Bulk Sales Act, between a sale by the mortgagee under a chattel mortgage and a sale by the owner, was made by the supreme judicial court of Massachusetts in Wasserman v McDonnell, 190 Mass. 326, 76 NE 959; Mills v Sullivan, 222 Mass. 587, 111 NE 605."

We have found one authority which closely parallels the instant case on the question presented by the taking over of the property by the mortgagee and crediting the value thereof on the mortgage note without a sale of the property by judicial processes or otherwise. Daniels v Pacific Brewing & Malting Co., (Wash.) 150 Pac. 609. The second syllabus reads:

"Under the Bulk Sales Law (Rem. & Bal Code, Par. 5296), requiring a vendor to make affidavit as to his creditors and indebtedness, a person indebted to a brewing company under a chattel mortgage upon his entire stock and fixtures may execute a bill of sale for the property covered by the mortgage without complying with the act, where no purchase money passes."

It is developed by the facts in this case that the mortgagees had borrowed a sum of money from the defendant, Brewing Company, securing the same by a chattel mortgage upon their saloon stock and fixtures. The mortgage also secured subsequent indebtedness and covered all additional stock and property which they might bring into the saloon business. The mortgage was duly recorded, the mortgagors continued in business with little success and finally in settlement of their indebtedness to the mortgagee executed and delivered a bill of sale for all of the property covered by the mortgage, the consideration being: "the release of any personal obligation and the discharge of any claim for indebtedness held by the buyer against the seller." The plaintiff commenced action against the mortgagees to recover the purchase price of liquor sold; judgment was entered in their behalf and garnishment proceedings were instituted against the defendant company. Judgment was entered in behalf of the garnishee and an appeal was taken. It was urged that the transfer by the bill of sale was a violation of the Bulk Sales Act. The court determined the cause as heretofore quoted from the syllabus.

Another view supporting our determination may be taken of the matter presented, though it has not been advanced in any of the cases which we have considered. If a chattel mortgage is a sale or transfer we would hesitate to say that the parties thereto would be governed by the Bulk Sales Act. §§8560-8561 GC define the requisite conditions to make chattel mortgages effective as to creditors, subsequent purchasers and mortgagees in good faith and the manner and method of giving notice to all concerned, i.e., by filing the mortgage with the Recorder of the county wherein the property mortgaged is situated.

The Bulk Sales Act is general in its terms. The chattel mortgage sections are particular and could relate to but one limited class of sales or transfers. Each of the acts should be given force and effect, the particular sections as exceptions to the general statutes. If this be done, then a chattel mortgage, though a sale or transfer would not be controlled by the Bulk Sales Act but by §§8560-8561 GC. Before mortgagees should be required not only to observe §§8560-8561 GC as to general notice and also the requirements of §11102 GC as to special notice to creditors, the Bulk Sales Act should definitely and specifically so provide. If both notices are required it makes the giving and the taking of a chattel mortgage an involved and cumbersome transaction, the natural effect of which would be to materially hamper the securing and extension of credit upon this class of security.

From a consideration of the cases cited by counsel in their briefs, those commented upon in this opinion and many others examined and considered, we believe that the weight of authority and the better reasoned authority require us to hold that the intervenor trustee is not entitled to the relief prayed in his petitions.

They will, therefore, be dismissed and judgment rendered for defendant for his costs.

KUNKLE and BARNES, JJ, concur.