## JERSEY BOULEVARD CORPORATION *v.* LERNER STORES CORPORATION

[No. 49, January Term, 1935.]

*Decided April 26th, 1935.*

The cause was argued before BOND, C. J., PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Hilary Gans* and *Herbert M. Brune, Jr.*, with whom was *Charles Ruzicka* on the brief, for the appellant.

*Reuben Oppenheimer* and *Robert P. Levis*, with whom were *Emory, Beeuwkes, Skeen & Oppenheimer* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

In this case a landlord of one of a chain of stores, after an adjudication in bankruptcy has ended the lessee's tenancy and left the landlord without any present, provable claim for the loss of future rents, seeks a remedy against a holding company, stockholder of the lessee corporation. It is complained that one single interest, incorporated as lessee, stockholder of the lessee, chief creditor of it, and purchaser of the assets in bankruptcy, has contrived to continue the stores with the original store assets, but with the obligation under the lease practically cast off, and that in this there is a remediable wrong to the landlord. The suit is in equity, and the appeal is from a dismissal of the bill of complaint on demurrer.

It is averred that the defendant holding company was incorporated in Maryland in 1929, and with all the other corporations mentioned in the bill was controlled and conducted by four men, Joseph J. Lerner, Michael Lerner, Samuel A. Lerner, and Harold Lane, from their office in New York City. The lessee, of the same name, was an older, operating corporation of the State of Delaware, all the stock of which was acquired by the defendant company by an exchange of its own stock; and, at the beginning of the transactions averred, this holding company was also a creditor of the lessee for about $2,000,000, of which $500,000 represented dividends declared but unpaid. The older Delaware corporation was the direct lessee and operating company of nearly all of one hundred and sixty stores in a chain, situated in thirty-nine jurisdictions, thirty-eight states and the District of Columbia. A few of the stores were leased and conducted by two corporations subsidiary to this Delaware corporation; the latter owning all their stock. The store of

this particular landlord, in Newark, New Jersey, had been leased to the Delaware company in 1926, at an annual rental of $33,000, and the complainant became landlord by an assignment. The lease was exhibited below, but it is stipulated that the only clause now relevant is one concerning a right of re-entry by the landlord on default in payment of rent, and it is conceded that the lease contained no special covenant that would commute its future rentals or otherwise give the landlord a present claim provable on a bankruptcy of the lessee. Compare *Irving Trust Co. v. A. W. Perry, Inc.*, 293 U. S. 307, 55 S. Ct. 150, 79 L. Ed. 174. And the bankruptcy proceeding was concluded before the amendment to section 63a of the Bankruptcy Act [48 Stat. 923, 991, 11 U. S. Code Ann., sec. 103 (a)], giving landlords provable claims for amounts of rents which would have fallen due in one year after surrender of the leased premises.

Beginning in the year 1931, the lessee, or its holding company of the same name, sought to have its rents reduced by consent, warning the landlords of danger of receivership because of "tremendous operating losses." It was declared to be the purpose to arrange as many reductions as possible, so that, if receivership should result, the prior arrangements would nevertheless provide for continued operation of the stores. And these efforts were continued into the following year, 1932. Danger of bankruptcy was mentioned, too. Reduction was refused by the complainant, landlord of the Newark store, and by others. The defendant, or those in control of it, then adopted the plan which brought about, as one step, the bankruptcy of the lessee corporation, on September 30th, 1932.

As described in the bill, it was a plan by which the single controlling interest, in the double position of stockholder and chief creditor, sought to escape the obligation for future rentals by abandoning the Delaware corporation as lessee and operating company, and at the same time continuing the business in the hands of new lessees, by exchanging the assets of the stores for preferred non-

voting stock, and notes bearing no interest, of new lessee corporations. For this exchange, thirty-nine corporations, one in each jurisdiction, were formed and made use of; and the defendant took the voting stock of all of them. Each of the thirty-nine was named Lerner Shops. And each had the same officers as those of the defendant corporation. The name of the original lessee corporation was changed; the name Lerner being omitted. The corporations subsidiary to the Delaware corporation made the same sales or exchanges. Then all of the lessee's bills for merchandise, and those of the subsidiaries, and all accrued rents on the stores, were paid in full; and, in addition, the lessee paid over to the defendant $97,500 in cash on account of the debt due the defendant in the much larger amount. With the stock and equipment of the stores thus removed to the new storekeepers, and the debts cleared off so far, the existing lessees passed into bankruptcy upon the petitions of the lessees themselves, on the ground of inability to pay their debts; and, the holding company having supplied money sufficient to pay all proved debts other than that due to itself, the stock and notes received by the trustee as assets were bought from it by means of the money and the latter debt, in the name of another newly formed corporation under the same control. Subsequently the landlords of most of the stores, accepting the abandonment by the original lessee, and the reduction of rentals which was the object sought, made new leases to the new corporations at reduced rentals. The bill itself does not make it clear whether the Newark store was continued at the same place. The trustee in bankruptcy did not, of course, take over the original leases, for the bankrupt corporation was already out of the business.

Upon these facts the lessor prays that the defendant be declared a trustee for it of the stock and notes of the thirty-nine corporations substituted for the store assets of the lessee, and purchased from the trustee in bankruptcy, that this substitution be annulled, and that receivers be appointed for the property and assets of the

defendant and its subsidiaries, to the end that the appropriate remedies may be fully secured to the complainant.

It is averred in one part of the bill that the defendant agreed to assume the obligations of the lessee corporation, but that the actual terms of the agreement are undisclosed and unknown to the complainant. And no other party to the agreement is specified. The defendant questions the sufficiency of such uncertain allegations to show any definite undertaking, either for the future rents or for damages, enforceable by the complainant. *Ewing v. Composite etc. Co.*, 169 Mass. 72, 47 N. E. 241; *Pennsylvania Steel Co. v. New York City R. Co.*, (C. C. A.) 198 Fed. 721, 749. If a new lease was subsequently made with that one of the thirty-nine corporations in New Jersey, or with any new lessee, the specific obligation for the future rents under the original lease was terminated by it, whatever undertaking of the defendant there might have been to replace it. *Leonard v. Apartments Co.*, 161 Md. 451, 454, 157 A. 752; *Calvert Building Co. v. Winakur*, 154 Md. 519, 534, 141 A. 355; *Deane v. Caldwell*, 127 Mass. 242, 248; *In re H. M. Lasker Co.* (C. C. A.) 251 Fed. 53; *Drew v. Billings-Drew Co.*, 132 Mich. 65, 92 N. W. 774; note, 40 *A. L. R.* 198. And, if there was such an undertaking, which would greatly simplify the complainant's case, the forum for its enforcement would seem to be at law. *Small v. Schaefer*, 24 Md. 143. It would be an undertaking rendering purposeless, and contradicting, all the remaining and principal complaint that the defendant by its maneuvers effectually destroyed the complainant's rights under its lease. Two distinct cases would be combined in the bill if this averment were good. We find it not good, because not a ground of relief in equity.

In the argument for equitable relief, the transactions are viewed as combining wrongs in interference with fulfillment of a contract by another, and in an obligor's removal of assets out of reach of a future creditor while continuing in enjoyment of them. Protection is claimed analogous to that provided in corporate reorganizatins

by consent and judicial decree, by requiring that creditors shall be paid or allotted shares in new distributions before stockholders are admitted to share, or analogous to the protection afforded even to future, and sometimes contingent, creditors, against fraudulent conveyances. *Angle v. Chicago, St. P., Minn. & Omaha R. Co.,* 151 U. S. 1, 14 S. Ct. 240, 38 L. Ed. 55; *Northern Pac. Co. v. Boyd,* 228 U. S. 482, 504, 33 S. Ct. 554, 57 L. Ed. 931; *Kansas City Southern R. Co. v. Guardian Trust Co.,* 240 U. S. 166, 36 S. Ct. 334, 60 L. Ed. 579; *Howard v. Maxwell Co.* (D. C.) 269 F. 292. And see *Burrill, Assignments,* secs. 9 and 10; *Williamson v. Wilson,* 1 Bland, 418, 430; *McCall v. Hinkley,* 4 Gill, 128, 136; *Sangston v. Gaither,* 3 Md. 40, 49; *Green v. Trieber,* 3 Md. 11, 35; *Williams v. Banks,* 11 Md. 198, 243; *Spuck v. Logan,* 97 Md. 152, 54 A. 989, 99 Am. St. Rep. 427; *Central Imp. Co. v. Cambria Steel Co.* (C. C. A.) 201 Fed. 811, 820. The precise relief demanded, by a return of the original store assets, is rather the undoing of a fraudulent transfer. To some extent the assets of the individuals owning or controlling the enterprise and those of the lessee corporation seem not to be distinguished as the law requires. The corporation's assets do not, of course, include those of the stockholder, and the complaint cannot be concerned with anything the stockholder may have done with its separate assets, or which may have been done with those of the individuals. *Bethlehem Steel Co. v. Concrete Pile Co.,* 141 Md. 67, 81, 118 A. 279; *Dollar Cleansers v. McGregor,* 163 Md. 105, 108, 161 A. 159. And the fact that the present proceeding follows after one of bankruptcy of the lessee corporation differentiates it from the proceedings in which the analogies are sought.

Stockholders of a corporation have a clear right to liquidate, applying the corporation's assets to its debts, at any time, by bankruptcy when the jurisdictional facts exist, by dissolution, or otherwise; and every obligation undertaken is subject to the exercise of that right. The ordinary effect upon those for future performance is that of commutation and conversion into present debts by

valuation; but, where the common law conception of rents has prevailed, as it now prevails in Maryland, and presumably in New Jersey, for there is no averment to the contrary, obligations for future rents have not been regarded as susceptible of this commutation and conversion. According to that conception, rent is not the result of an ordinary contract for future payments of money, certain to accrue. The land is the debtor, "yielding and paying" the rents at the stipulated intervals; the covenant to pay is an accessory one; and in advance of the rent day there is no present debt for future payment. "Rent issues from the land, is not due until the rent day, and is due in respect of the enjoyment of the premises let." *Wm. Filene's Sons v. Weed,* 245 U. S. 597, 601, 38 S. Ct. 211, 213, 62 L. Ed. 497; *Gardiner v. William S. Butler & Co.,* 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 505. There have been many expressions of dissatisfaction with the result of this old conception, but the court feels bound by its uninterrupted acceptance in this state. *Langdell, Equity Jurisdiction,* 199, etc.; *Tiffany, Landlord & Tenant,* 1009; 2 *Woerner, Administration* (3rd Ed.) 1274; *Glenn, Liquidation,* 699; *Woodland v. Wise,* 112 Md. 35, 75 A. 502; *Martin v. Martin,* 7 Md. 368; *Gluck v. Baltimore,* 81 Md. 315, 32 A. 515; *Donelson v. Polk,* 64 Md. 501, 2 A. 824.

Therefore, prior to the adoption in 1934 of the amendment to the Bankruptcy Act already referred to, making an arbitrary allowance in liquidation of rents to fall due in one year, the obligation was generally treated as contingent in too great a degree for conversion into a present debt. "The effect is neither to accelerate the future instalments of rent, nor to vest the landlord with a provable claim for damages, based upon the difference between the future rent as stipulated, and the rental value of the premises as it exists at present or in the future can be estimated. In other words the landlord has no claim, either for future rent or for breach of the covenant to pay rent. * * * In equity receiverships it is also the rule; the only difference being that, as the time limit for

540

presentation of claims is flexible, the landlord can present a claim for all rent that may have accrued up to the date of distribution. But as to instalments not accrued at that time, the same rule has been applied as in bankruptcy, and the rent covenants are not regarded as accelerated by the receivership." *Glenn, Liquidation,* 699; *Woodland v. Wise,* 112 Md. 35, 76 A. 502. The rights of a landlord have never been regarded as capable of obstructing this right to liquidate, and the consequent practical destruction of the lease has been an injury to the landlord without a remedy. *Manhattan Properties, Inc. v. Irving Trust Co.,* 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824; *Gaither v. Stockbridge,* 67 Md. 222, 9 A. 632, 10 A. 309; *Woodland v. Wise, supra; United States v. Poe,* 120 Md. 89, 94, 87 A. 933; *In re Paramount Publix Corp.* (C. C. A.) 72 Fed. (2nd) 219; *Barber Asphalt Co. v. Poe,* 139 Md. 332, 335, 115 A. 24; *Hastings Corp. v. Letton,* (1908) 1 K. B. 378, 3 Brit. Rul. Cas. 627.

Unless there should be some ground of complaint other than the resort to bankruptcy, then, if the stockholder, fearing, or shirking, the corporation's obligations under continued unfavorable economic conditions, has done no more than turn its assets over to its existing creditors, the landlord, though excluded from the distribution and practically deprived of further benefits from his lease, would have no recourse. This would be true though evasion of the future obligation to the landlord furnished the principal motive for the bankruptcy; that specific purpose would not affect the exercise of the clear legal right. *Owens v. Graetzel,* 149 Md. 689, 697, 132 A. 265; *Luckemeyer v. Seltz,* 61 Md. 313, 318; *Horwitz v. Ellinger,* 31 Md. 492, 504; *Galbraith v. Bay Trust Co.* (C. C. A.) 64 Fed. (2nd) 389.

The bankruptcy proceeding is limited in its effects, especially against a complainant who, not having had a provable claim, was a stranger to it. Against the stranger, it does not foreclose any question of fact or of law subsidiary to the proceeding. "An adjudication in bankruptcy, like other judgments *in rem.* is not *res judicata*

as to the facts or as to the subsidiary questions of law on which it is based, except as between parties to the proceeding." *Gratiot Bank v. Johnson,* 249 U. S. 246, 248, 39 S. Ct. 263, 63 L. Ed. 587; *Myers v. International Co.,* 263 U. S. 64, 73, 44 S. Ct. 86, 68 L. Ed. 165; *Manhattan Properties, Inc., v. Irving Trust Co.,* 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824; *In re Sherwoods* (C. C. A.) 210 Fed. 754; *Jarvis v. Heiner* (C. C. A.) 39 Fed. (2nd) 361; *Wood v. Grundy,* 3 H. & J. 13; *Emmert v. Stouffer,* 64 Md. 543, 551, 3 A. 293, 6 A. 177; *Brown v. Smart,* 69 Md. 320, 331, 14 A. 468, 17 A. 1101; *Stocksdale v. Jones,* 133 Md. 176, 185, 104 A. 416. "An adjudication in voluntary bankruptcy is not *res judicata* even on the issue of insolvency at the day of adjudication." 1 *Remington, Bankruptcy,* sec. 528.50. But the proceeding, all that has been done in it, and its inseparable consequences, are beyond collateral attack. The conferring of the bankrupt status, the appropriation of the bankrupt's assets to the payment of its provable debts, and the sale of the assets, are all beyond dispute in this case, whatever foundation there may be for doubts of the correctness of them. *Gratiot Bank v. Johnson, supra.*

If, as stated, then, the defendant stockholder of the lessee corporation had merely turned the store assets over to creditors in a bankruptcy proceeding, the landlord would have had no legal ground of complaint for the consequences to him, no matter what they were. *In re Paramount Publix Corp.* (C. C. A.) 72 Fed. (2nd) 219. If, again, the stockholder, in order to keep the stores going, had turned over, not the store assets, but money to the full value of them, exchanged for the store assets together with the going value, there would still have been no loss to the landlord of whch he might complain beyond that which would inevitably follow from a *bona fide* bankruptcy and liquidation. But a proper party might find a wrong and cause for complaint in an unequal preparatory exchange of the assets, which would amount to an appropriation to the stockholder of a margin of value above that of the assets turned over to the trustee. And that,

we think, would be the only permissible ground of complaint now. A complaint of the price at which the trustee disposed of the assets turned over to it would seem to be excluded as a collateral attack on the bankruptcy proceedings, and there are no averments of inadequacy of the consideration.

But, if there should have been an inequality in the preparatory exchange, and a cause of complaint in that, it would seem to be one not open to this complainant. In accordance with the plain purpose of the Bankruptcy Act, all the assets of the bankrupt became vested in the trustee for application of them to the payment of the provable debts. It has not been intended that any reservation should be made for future creditors, with debts not provable, but intended, on the contrary, that nothing shall be left for such creditors. It has often been decided that creditors with provable claims could not pursue transferred assets. *Snyder v. Routzahn* (D. C.) 55 Fed. (2nd) 396; *Miller v. Arenz,* 103 Or. 592, 597, 193 P. 439, 206 P. 299; *Winters Nat. Bank v. Acceptance Corporation,* 47 Ohio App. 324, 191 N. E. 889. Only one decision in a suit by a possible creditor without a provable claim has been brought to our attention, and in that the same rule was applied. *State v. Allstadt,* 166 Tenn. 349, 356, 61 S. W. (2nd) 473, 62 S. W. (2nd) 566. The reason of the rule would seem to be effective in both cases. The adjudication in bankruptcy is that the assets shall be distributed in payment of the provable debts, and for that purpose the trustee as the agency of the court has title to all that can be recovered. No stranger with a claim not provable could consistently be permitted to compete with the trustee in the recovery. The point of difficulty here, and one on which the law may, perhaps, be regarded as not yet settled, is with respect to assets possibly recoverable by the trustee but overlooked or ignored by it.

Under the circumstances averred in this bill, with only one and the same interest to be consulted on all sides, there would have been no purposes of the bankruptcy proceeding to be subserved by hunting out additional as-

sets; and, if any had been retained by the defendant in an unequal exchange or otherwise, the closing of the proceeding might have left them permanently unsought by the trustee. It might be considered that title, to rest anywhere, must then rest in the bankrupt, and the assets be thus available to future creditors, like assets not included in an assignment. *Glenn, Liquidation*, 200, 201; *Mims v. Armstrong*, 31 Md. 87, 1 Am. Rep. 22. And see *Morgan v. Ownbey*, 2 W. W. Harr. (32 Del.) 437, 125 A. 418. This consideration has impressed the court, but we believe that good general principles and the intention of the Bankruptcy Act require that the bankruptcy proceeding be taken to have disposed of all assets then recoverable. Any margin of assets that might have been withheld would be within those appropriated to the purposes of that proceeding, and in law belong to the trustee for the court. If a creditor with no provable claim should succeed in disclosing an omitted margin, it would be the duty of the trustee still to appropriate it, except in the few cases in which all provable claims may have been paid in full. Questions whether any transferred assets should rightly be pursued would in most cases have been determined by the trustee, and, after that determination and the discharge of the bankrupt, it is intended that there shall be a settled condition for the bankrupt that would not consistently admit of opening litigation on the same questions by future creditors.

It might easily be agreed that a landlord whose lease has been rendered ineffectual by such a series of transactions suffers a grievance; and there may be reasons for disagreeing in this. See note, *44 Yale Law Journal*, 671. But the substantial grievance, if it existed, lay in the exclusion, before 1934, of the claims of landlords from among those to which a bankrupt's assets could be applied, and from the proceeding in which they were so applied. There seems to this court to be no amendment of the condition available to the excluded creditor on the theories elaborated by the complainant here, except by extending those theories, with possible detriment in cases which may come up on other facts.

This conclusion disposes of the case, and with it several questions which would remain if a margin of assets could be pursued by any claimant other than the trustee in bankruptcy.

*Decree affirmed, with costs.*